La menor NILDA I. VÉLEZ RODRÍGUEZ, representada por su madre NILDA RODRÍGUEZ, también esta última por sí y como concubina de DON SIGFREDO VÉLEZ PAGÁN; el menor de edad SIGFREDO VÉLEZ VÉLEZ, representado por su madre IRMA VÉLEZ LUCENA y OTROS, demandados y recurridos, v. PEDRO AMARO CORA, JANE DOE, la SOCIEDAD LEGAL DE GANANCIALES que la componen, y RICHARD DOE, titular registral del vehículo KENWORTH, 1973, TABLILLA RP 0454 y/o h/n/c SANTORI TRUCKING y la COMPAÑÍA DE SEGUROS X INSURANCE COMPANY, demandados y recurrentes; SANTA NOEMÍ ORTIZ, por sí y en representación de sus hijos menores LEONEL, JUSTIN y CARLOS URIBE ORTIZ, ETC., demandantes, v. PEDRO AMARO CORA ET ALS., demandados y demandantes contra terceros y recurrentes, y SUCESIÓN DON SIGFRIDO VÉLEZ PAGÁN, compuesta por sus hijos menores de edad y OTROS, terceros demandados.

*Número:* RE-90-563 *Resuelto:* 10 de abril de 1995

*Santiago Mari Roca,* de *Biaggi Busquets & Mari Roca,* abogado de los recurrentes; *Nelson Vélez Lugo,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

En la madrugada del 20 de septiembre de 1987, Pedro Amaro Cora y su hermano Jaime Amaro Cora discurrían en un camión[1] por la Carretera Estatal Núm. 2, de Sur a Norte, en dirección de San Germán a Mayagüez, para llevar a cabo una entrega de gasolina en el pueblo de Hatillo.[2] El camión, el cual era conducido por Pedro Amaro Cora, era uno dividido en dos (2) "piezas", a saber, remolcador y arrastre. En el arrastre llevaba un tanque de aproximadamente ocho mil (8,000) galones de gasolina. A eso de las 5:00 A.M., al llegar al kilómetro 164.4 de la Carretera Estatal Núm. 2 en la intersección con la carretera

---

[1] El camión de arrastre era uno marca Kenworth, Modelo 1973, tablilla RP-0454 y su dueño registral era Santori Trucking, Inc. La Corporación Insular de Seguros tenía expedida una póliza que cubría dicho camión.

[2] Según surge de las determinaciones de hecho de la sentencia de instancia, a la página tres (3), aunque "estaba oscuro, el tiempo era normal y seco, había poco tránsito y la visibilidad era buena. Llevaban las luces delanteras del camión encendidas". Sentencia, pág. 3.

número 345 hacia Hormigueros,(³) Pedro Amaro Cora se percató de que un automóvil,(⁴) *en retroceso,* "cruzaba" la intersección justo al frente del camión y, aunque frenó, no pudo detener el camión a tiempo por lo que impactó al referido vehículo por su centro lateral izquierdo.(⁵) El conductor del automóvil, Sigfredo Vélez Pagán, y el pasajero del mismo, Leonel Uribe Arbelaes, *fallecieron* en el acto. *Ambos estaban en estado de embriaguez.*(⁶) Las autopsias realizadas revelaron que el Sr. Vélez Pagán y el Sr. Uribe Arbelaes tenían, respectivamente, *once (11) y veinticuatro (24) centésimas del uno por ciento de alcohol por volumen*

---

(³) Según la Estipulación número trece (13) "a la fecha de los hechos, las rotulaciones existentes en la carretera limitaban la velocidad máxima a 55 m.p.h., pero justo adelante del lugar donde ocurrió el accidente había un rótulo que indicaba que de ahí en adelante comenzaba un trayecto con límite de velocidad de 50 m.p.h.". Véase Solicitud de revisión, pág. 6.

(⁴) El vehículo era uno marca Toyota 1972, tablilla AFN-938, propiedad de Sigfredo Vélez Pagán.

(⁵) En la Deposición, estipulada por las partes, del Sr. Pedro Amaro Cora —a las páginas 17B y 18— éste recuenta lo acontecido como sigue:

"R La madrugada del 20 de septiembre. O sea, vamos a empezar así, la madrugada del 20 de septiembre yo salí de mi casa aproximadamente a las dos de la madrugada para llevar gasolina a Hatillo. Fui y recogí el camión al solar, lo chequeé de todo y de luces y salí. Esperé a mi hermano frente al cementerio de Guayama, allí lo recogí y partimos hacía acá. Cuando venimos comentando lo de la carretera, que la carretera estaba tranquila, no hay casi ni tráfico, nosotros prácticamente estábamos solos en la carretera, los carros que me encontré regularmente eran en dirección contraria. Cuando llegamos a la intersección para Hormigueros, yo vengo por el carril de la derecha y cuando de momento yo veo ese carro en el carril de la izquierda, apliqué los frenos y traté de esquivar el golpe, yo halé el guía hacia la izquierda y por eso es que el truck quedó parqueado en el carril de la izquierda.

"P Le pregunto, usted dice que vio ese carro en el carril de la izquierda?

"R En el carril de la izquierda.

"P Lo vio, cómo estaba, en movimiento o estaba parado.

"R En retroceso.

"P Y usted iba por la derecha manifestó?

"R Sí, señor.

"P Y usted lo ve y hala el guía para la izquierda, para encima de ellos.

"R No, a esquivarlo, porque él viene a la izquierda y va en retroceso hacia encima de mí, yo trato de evitar el golpe." Deposición tomada al Señor Pedro Amaro Cora, págs. 17B-18.

(⁶) Según la Sección 1041 de la Ley de Vehículos y Tránsito de Puerto Rico —9 L.P.R.A. sec. 1041(b)(2)— se presumirá que el conductor está bajo los efectos de bebidas embriagantes "[s]i al momento del análisis había en la sangre del conductor diez (10) centésimas de uno (1) por ciento, o más, de alcohol, por ciento por volumen ...".

*de sangre.* En adición, debe señalarse que Uribe Arbelaes dio positivo a la prueba de cocaína en su organismo.(⁷)

El 3 de febrero de 1988, los familiares de Vélez Pagán y de Uribe Arbelaes radicaron demandas sobre daños y perjuicios,(⁸) CS-88-107 y CS-88-108 respectivamente, ante el Tribunal Superior de Puerto Rico, Sala de Mayagüez, contra el conductor del camión, Pedro Amaro Cora, la compañía dueña del mismo, Santori Trucking Inc., y su aseguradora, Corporación Insular de Seguros. El 12 de agosto de 1988, se radicaron las contestaciones a ambas demandas. A su vez, en esa misma fecha, en el caso Civil CS-88-108, los co-demandados Pedro Amaro Cora, Santori Trucking, Inc. y la Corporación Insular de Seguros, instaron demanda contra tercero contra la Sucesión de Vélez Pagán, aduciendo, en síntesis, que había sido éste el causante y responsable de la totalidad del daño sufrido por los terceros demandantes en esta acción y suplicando del tribunal que condenara a los terceros demandados a "indemnizar a los demandantes de este caso por los daños y perjuicios que *puedan* haber sufrido". (Énfasis suplido.) Demanda contra tercero, pág. 2.(⁹) Ese mismo día, los aludidos codemandados radicaron *solicitud de consolidación,* la cual fue declarada *con lugar* mediante resolución del día 15 de agosto de 1988.

Luego de los trámites de rigor, el foro de instancia dictó sentencia declarando con lugar ambas demandas consoli-

(⁷) Según la evidencia que obra en autos, al Sr. Pedro Amaro Cora se le sometió a la prueba de alcohol, *la cual resultó negativa.*

(⁸) La demanda CS-88-107 de los familiares del Sr. Vélez Pagán es por lucro cesante, el valor del vehículo accidentado y varias partidas de angustias mentales totalizando la reclamación un millón ciento veintidós mil dólares ($1,122,000.).

Por su parte, la demanda CS-88-108 de los familiares del Sr. Uribe Arbelaes es por lucro cesante proveniente de la muerte de su causante, así como por sufrimientos y angustias mentales totalizando la reclamación un millón cincuenta mil dólares ($1,050,000).

(⁹) De una lectura minuciosa de la referida "Demanda Contra Tercero" se puede razonablemente inferir que la misma realmente no es una mediante la cual se reclaman daños. Más bien, lo expuesto en dicha demanda es una defensa afirmativa; esto es, que el accidente ocurrido se debió a la culpa y negligencia de los occisos.

dadas, imputándole un cincuenta por ciento (50%) de negligencia al conductor co-demandado Pedro Amaro Cora y un cincuenta por ciento (50%) de negligencia al fallecido Vélez Pagán, negligencia que le imputó también al pasajero Uribe Arbelaes. A su vez, declaró sin lugar la demanda contra tercero instada contra los herederos de Vélez Pagán porque estos no fueron emplazados, ni de otro modo se sometieron a la jurisdicción del tribunal, y por razón de que la parte tercera demandante *no* "ofreció prueba para establecer los daños alegados en la reconvención".

Inconformes, recurrieron ante este Tribunal Pedro Amaro Cora, Santori Trucking, Inc., y su compañía aseguradora, en revisión de la referida sentencia, imputándole al tribunal de instancia haber errado al:

> 1. ...determinar que Pedro Amaro Cora había sido responsable de la ocurrencia del accidente en un 50%.
> 2. ...permitir que la parte demandante presentara prueba para sostener su causa de acción por lucro cesante luego de haber sometido su caso.
> 3. ...valorar los daños concediendo compensaciones exageradamente altas a los demandantes-recurridos por concepto de angustias mentales.
> 4. ...determinar que no procede estimar con lugar la Demanda Contra Tercero instada en el caso CS-88-108 contra los herederos del causante Sigfredo Vélez Pagán.
> 5. ...determinar que la imprudencia concurrente de los causantes no le es imputable a sus causahabientes. (Énfasis suprimido.) Solicitud de revisión, pág. 15.

Expedimos el recurso de revisión. Habiendo comparecido ambas partes, y estando en posición de resolver el recurso, procedemos a así hacerlo.

## I

El Art. 1802 de nuestro Código Civil, 31 L.P.R.A. sec. 5141, establece que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia

concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización". Para que prospere una acción de daños y perjuicios, bajo el citado Art. 1802, deben concurrir tres (3) requisitos, a saber: (1) daño sufrido; (2) acto u omisión culposo o negligente y (3) nexo causal entre el daño y la referida acción u omisión culposa o negligente de la otra parte. *J.A.D.M. v. Centro Com. Plaza Carolina*, 132 D.P.R. 785 (1993); *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294 (1990); *Soc. Gananciales v. G. Padín Co., Inc.*, 117 D.P.R. 94, 106 (1986); *Hernández v. Fournier*, 80 D.P.R. 93, 96 (1957).

El factor de la previsibilidad[10] es de gran importancia en los casos de daños y perjuicios ya que "el Art. 1802 gira inevitablemente en torno a la función de previsión del individuo, como factor determinante de su responsabilidad con su congénere". (Énfasis suprimido.) *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8, 18 (1987). "Claro está, esto no quiere decir que la persona esté obligada a prever todos los posibles riesgos que puedan concebirse en una determinada situación, pues prácticamente se convertiría entonces en una responsabilidad absoluta." *Pacheco v. A.F.F.*, 112 D.P.R. 296, 300 (1982).[11] "El deber de previsión no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad ... sino a aquel que es probable que suceda y que llevaría a una persona prudente a anticiparlo." *Hernández v. La Capital*, 81 D.P.R. 1031, 1038 (1960).

A la luz de estos parámetros, procedemos a discutir el primer señalamiento de error aducido por la parte demandada-recurrente a los efectos de que el tribunal de instancia erró al determinar que Pedro Amaro Cora había sido

---

[10] En *Salvá Matos v. A. Díaz Const. Corp.*, 95 D.P.R. 902, 906 (1968), definimos la *previsibilidad* como el elemento característico de la culpa, consistente en la posibilidad de prever los resultados dañosos de la acción no previstos de modo efectivo en el caso de que se trate.

[11] Véase en adición *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8, 19 (1987).

responsable de la ocurrencia del accidente en un cincuenta por ciento (50%). *Coincidimos* con el tribunal de instancia en que ambos conductores incurrieron en negligencia y que ambos contribuyeron a lo acontecido. *Discrepamos*, sin embargo, de su conclusión en relación con los por cientos de negligencia imputados a cada uno de ellos. Somos del criterio que *debe reducirse* el por ciento de negligencia imputada por el foro de instancia a Pedro Amaro Cora, conductor del camión. Veamos por qué.

La *prueba pericial* presentada ante el tribunal de instancia respecto a la velocidad a la que tenía que haber estado transcurriendo el camión previo al impacto, *prueba que fue creída por dicho foro judicial*, fue a los efectos de que el mencionado camión transcurría a una velocidad entre cuarenta y nueve (49) y sesenta (60) millas por hora. Debe mantenerse presente que dicho camión era uno de arrastre de gasolina. Al momento de los hechos, la Ley de Vehículos y Tránsito de Puerto Rico disponía —9 L.P.R.A. sec. 841(b)(4)— que la velocidad máxima a la que podía transitar este tipo de camión, de transporte de sustancias peligrosas, era de cuarenta (40) millas por hora.[12] Ese hecho —conducción del camión a una velocidad mayor que la permitida por ley— evitó, conforme la prueba pericial presentada y creída por el foro de instancia, que el conductor del mismo pudiera frenar a tiempo y evitar el impacto.

Ello no obstante, y sin restarle importancia a la negligencia en que incurre un conductor al conducir un vehículo de motor a una velocidad mayor que la permitida por ley, *somos del criterio que la negligencia del conductor del vehículo Toyota, Vélez Pagán, fue una mayor que la del conductor del antes mencionado camión.* Debe recordarse que, justo antes del impacto, Vélez Pagán y Uribe Arbelaes

---

[12] La referida sección 841(b)(4) fue enmendada en 1988 para reducir la velocidad máxima a la que puede transitar todo vehículo de motor que transporte materiales tóxicos o sustancias peligrosas a *treinta (30) millas por hora.*

pretendían ingresar, *en retroceso*, de una vía secundaria a una carretera principal. Esto es, el conductor Vélez Pagán, al así actuar, *crasamente* violó la Sec. 954 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 954, la cual establece que:

Sec. 954. *Movimiento en retroceso*

(a) Ningún conductor deberá dar marcha hacia atrás en una vía pública *a no ser que tal movimiento pueda hacerse con razonable seguridad*, por un trecho relativamente corto y siempre que se haga sin intervenir o interrumpir el tránsito.

(b) *Se prohíbe las salidas de vehículos en retroceso desde una vía pública de menor tránsito a otra de mayor tránsito.* El conductor de un vehículo no dará marcha atrás al mismo sobre el paseo o sobre la zona de rodaje de una vía pública con accesos controlados. (Énfasis suplido.)

■ Aun en situaciones en que un conductor de un vehículo de motor tiene el "derecho de paso", hemos resuelto que ese conductor tiene la obligación de ejercer un alto grado de cuidado, tener su vehículo bajo control, y debe mirar a su alrededor con el propósito de evitar una colisión. *Damiani v. Donatiu*, 95 D.P.R. 829, 836 (1968). Véase, en adición, *Flores v. F. & J. M. Carreras, Inc.*, 83 D.P.R. 332, 333 (1961).

■ Resulta obvio que Vélez Pagán así no actuó. En adición, no podemos olvidar el hecho de que éste conducía el vehículo mientras estaba en estado de embriaguez. Desde hace más de ocho (8) décadas resolvimos que, teniendo en cuenta el efecto que las bebidas alcohólicas causan en los sentidos y facultades motoras de las personas, incurre en negligencia el conductor que conduce un vehículo de motor en estado de embriaguez, *El Pueblo v. De Jesús*, 18 D.P.R. 960 (1912); *normativa que en el día de hoy reiteramos.*

■ Por último, y aun cuando ello no es determinante, debe mantenerse presente que todo conductor en Puerto Rico tiene el derecho a *presumir* que sus contrapartes han

de observar las reglas básicas de tránsito. *Carrio v. Compañía Insular de Transporte, Inc.*, 49 D.P.R. 41, 44 (1935). Ello significa, en cuanto al presente caso, que el conductor del camión de arrastre no tenía por qué prever que un auto iba a entrar, en retroceso y en forma atolondrada, de una vía secundaria a la carretera principal por la cual él transitaba.

*En conclusión*, y aun cuando entendemos que ambos conductores fueron negligentes, somos del criterio que el tribunal de instancia efectivamente *erró* al determinar los por cientos de negligencia en que incurrieron ambos conductores. A nuestra manera de ver las cosas, y a la luz de los hechos específicos del caso de autos, entendemos procedente imputarle únicamente un veinte (20) por ciento de negligencia al conductor del camión, el codemandado Pedro Amaro Cora, y un ochenta (80) por ciento al conductor del automóvil, Sigfredo Vélez Pagán.

Como expresáramos en la relación que de los hechos hiciéramos, el foro de instancia le *"imputó"* a Uribe Arbelaes, pasajero en el automóvil conducido por Vélez Pagán, el mismo por ciento de negligencia en que determinó que éste último había incurrido. *Aún cuando ello no es enteramente correcto, el resultado, como veremos, es el mismo.* Es "'regla general reconocida en esta jurisdicción, que la negligencia del conductor de un vehículo no puede imputarse a un pasajero'". *Pacheco v. Pomales*, 55 D.P.R. 341, 345 (1939). Véase, además, *Flores v. F. & J. M. Carreras, Inc.*, ante, a la pág. 334.

■ Ello no obstante, hemos resuelto que un pasajero de un vehículo de motor, demandante en un pleito sobre daños y perjuicios, *incurre* en negligencia *siempre que* se cumplan con *tres* (3) requisitos, o circunstancias; a saber: que "(1) el chofer estaba borracho o bajo la influencia del licor a tal extremo que lo hacía un chofer descuidado e incompetente; (2) el [pasajero] demandante sabía o debió saber la condición del chofer; y (3) el estado de embriaguez

[o el conducir bajo la influencia del licor] fu[e] un factor contribuyente al accidente". *Acosta v. Crespo*, 70 D.P.R. 239, 250 (1949). Véase, en adición, *Acosta Vargas v. Tió*, 87 D.P.R. 262, 275 (1963), normas, *ambas*, que en el día de hoy *reiteramos*.

Resulta meridianamente claro que en el caso de autos están presentes las antes señaladas tres (3) circunstancias. Recordaremos que, en adición a tener veinticuatro (24) centésimas del uno por ciento de alcohol por volumen de sangre al momento del accidente, la autopsia que se le practicara a Uribe Arbelaes demostró que éste había hecho uso de la droga narcótica conocida como cocaína. Por otro lado, resulta igualmente obvio que Uribe Arbelaes sabía, o debía saber, que Vélez Pagán estaba embriagado y que éste conducía el vehículo en forma negligente y atolondrada. Por último, no cabe duda de que el estado de embriaguez de Vélez Pagán fue un factor determinante en la ocurrencia del accidente.

Procede, a la luz de todo lo antes mencionado, imponerle a Uribe Arbelaes, *igualmente*, un ochenta (80) por ciento de negligencia.

## II

La parte demandada-recurrente señala, como segundo error, que el tribunal de instancia incidió al permitir que la parte demandante presentara prueba para sostener su causa de acción por lucro cesante. A nuestro juicio este error *no* fue cometido.

Según se desprende de la Minuta de 28 de febrero de 1990,([13]) la parte demandada-recurrente objetó que se le permitiera a la demandante-recurrida presentar *testimonio pericial* con respecto al asunto de lucro cesante toda vez que los nombres de los testigos peritos no fueron anun-

---

([13]) Apéndice de la Solicitud de revisión, pág. 85.

ciados en el informe de conferencia con antelación al juicio. *La objeción fue acogida por el tribunal de instancia y se permitió tan sólo el desfile de prueba testifical ordinaria de los demandantes, no pericial, en cuanto a lucro cesante.*

■ Es obvio que el tribunal de instancia actuó correctamente en cuanto a este aspecto. Se negó a permitir prueba *pericial*, sobre lucro cesante, por ésta no haber sido debidamente anunciada en la etapa pre juicio. Ello no significa, sin embargo, que los propios demandantes no pudieran aportar prueba sobre ese extremo. Conforme resolvimos en *Acosta & Rodas, Inc. v. PRAICO*, 112 D.P.R. 583 (1982), *no* es indispensable el testimonio de peritos para sostener la partida de lucro cesante cuando los testimonios ofrecidos, por la parte demandante, demuestran que los testigos que prestan los mismos son personas de suficientes conocimientos; los cuales ponen al juez en posición de estimar las partidas de lucro cesante. Véase: H.M. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, págs. 474 y siguientes.

■ Debe señalarse, *sin embargo*, que el tribunal de instancia, al calcular el ingreso de Uribe Arbelaes para determinar el lucro cesante de sus dependientes, *cometió error* al no reducir los mismos por concepto de los *gastos propios o personales* del occiso. Según lo resuelto en *Viuda de Serraballs v. Abella Hernández*, 90 D.P.R. 368 (1964), y *Rodríguez v. Ponce Cement Corp.*, 98 D.P.R. 201 (1969), procede que, luego de que se determine el ingreso anual del causante, se le deduzca una *suma razonable* del balance que resulte por concepto de los gastos personales del occiso, la cual puede llegar hasta una tercera parte. *Viuda de Serraballs v. Abella Hernández*, ante. Resulta procedente, en consecuencia, que el tribunal de instancia, al recibo del mandato, *corrija* el referido error y calcule correctamente las partidas de lucro cesante a concederse a los dependientes de Uribe Arbelaes según antes indicado.

## III

La parte recurrente señala, en tercer lugar, que el tribunal de instancia erró al valorar los daños, concediendo compensaciones "exageradamente altas" a los demandantes-recurridos por concepto de angustias mentales.[14] *No le asiste la razón.*

 Como hemos expresado en innumerables ocasiones, la gestión judicial de estimación y valoración de daños es una difícil y angustiosa, no existiendo un sistema mecánico que nos permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. *Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 451 (1985); Urrutia v. A.A.A.*, 103 D.P.R. 643 (1975).

 Hemos reconocido el hecho de que, en relación con esta difícil y angustiosa labor, los tribunales de instancia, *de ordinario*, están en una mejor posición que los tribunales apelativos para evaluar la situación por cuanto éstos son los que tienen *contacto directo* con la prueba que a esos efectos presenta la parte que los reclama. *Publio Díaz v. E.L.A.*, 106 D.P.R. 854 (1978). Ahí la razón para *la*

---

[14] Según surge de la sentencia de instancia, a base de la prueba de angustias mentales presentada en el caso CS-88-107, se estimaron los daños como sigue: Juana Paula Pagán Irizarry, madre del causante, cuarenta mil dólares ($40,000); Luis Vélez Martínez, padre del causante, cuarenta mil dólares ($40,000); Sigfredo Vélez Vélez, hijo del causante, cincuenta mil dólares ($50,000); Nilda Ivette Vélez Rodríguez, hija del causante, treinta mil dólares ($30,000); Nilda Rodríguez Rodríguez, concubina del causante, veinticinco mil dólares ($25,000); Irma Vélez Lucena, exesposa del causante, cinco mil dólares ($5,000) y, Priscila, Wilson, Luis Enrique y Reinaldo, todos de apellidos Vélez Pagán, hermanos del causante, diez mil dólares ($10,000) cada uno.

En relación con el caso CS-88-108 el juez no desglosó las cantidades concedidas por angustias mentales. No obstante, calculamos las mismas restando de la cantidad total concedida a cada persona, la cantidad otorgada por el lucro cesante. Estos cálculos arrojan las siguientes cantidades por angustias mentales: Santa Noemí Ortiz, viuda del causante, treinta y cuatro mil dólares ($34,000); Leonel Uribe Ortiz, hijo del causante, cuarenta y dos mil doscientos noventa y siete dólares con cuarenta y dos centavos ($42,297.42); Justin Uribe Ortiz, hijo del causante, treinta y dos mil trescientos treinta y tres dólares con treinta y cuatro centavos ($32,333.34) y Carlos Uribe Ortiz, hijo del causante, veintidós mil trescientos treinta y tres dólares con treinta y cuatro centavos ($22,333.34).

*norma de abstención judicial*; esto es, la de que este Tribunal no intervendrá con la decisión que a ese respecto emitan los tribunales de instancia a menos que las cuantías concedidas sean "ridículamente bajas o exageradamente altas", *Valldejuli Rodríguez v. A.A.A.*, 99 D.P.R. 917 (1971), *Urrutia v. A.A.A.*, ante, y de que la parte que ante este Tribunal solicita la modificación de las sumas concedidas a nivel de instancia demuestre la existencia de circunstancias que hagan meritorio el que se modifiquen las mismas. *Canales Velázquez v. Rosario Quiles*, 107 D.P.R. 757 (1978); *Rodríguez Cancel v. A.E.E.*, ante.

La parte recurrente *no* ha demostrado, a nivel apelativo, las circunstancias que ameritan que las cuantías concedidas en el presente caso sean modificadas o reducidas por ser las mismas "exageradamente altas". Por lo tanto, no se nos ha puesto en condiciones de hacer nuestra propia evaluación y determinación, referente la misma a las angustias mentales sufridas por los demandantes. Acorde con la deferencia que, de ordinario, merece la estimación de daños efectuada por el tribunal de instancia, somos del criterio que no se justifica nuestra intervención para reducir las cantidades por ser las mismas, como se alega, "exageradamente altas". *Chico v. Editorial Ponce, Inc.*, 101 D.P.R. 759, 780 (1973). Por lo tanto, ejercemos la norma de abstención judicial fundada en criterios de estabilidad y de respeto a los tribunales de primera instancia. *Urrutia v. A.A.A.*, ante.

En vista de lo antes expuesto, procede la confirmación de las sumas de dinero concedidas por el tribunal de instancia por angustias mentales a todos los demandantes, *con la excepción de* las indemnizaciones otorgadas por angustias mentales a Justin Uribe Ortiz y Carlos Uribe Ortiz —hijos del co-demandado Uribe Arbelaes— quienes *no* declararon en juicio[15] en relación con los daños por ellos

---

[15] Véase Minuta del 28 de febrero de 1990 donde surgen las personas que testificaron en cuanto al aspecto de daños. (Apéndice Solicitud de Revisión, Docu-

sufridos. Por lo tanto, y según lo resuelto en *Moa v. E.L.A.*, 100 D.P.R. 573, 587 (1972),[16] éstos *no* tienen derecho a recobrar las referidas sumas.

## IV

En cuarto lugar, el recurrente señala que el tribunal de instancia erró al declarar sin lugar la demanda contra tercero instada por la parte demandada-recurrente en el caso CS-88-108 contra los herederos del causante Sigfredo Vélez Pagán.

Como se recordará, los demandados Pedro Amaro Cora, Santori Trucking, Inc., y Corporación Insular de Seguros radicaron una "demanda contra tercero" contra "uno" de los demandantes originales, esto es, contra la Sucesión de Sigfredo Vélez Pagán.[17] Esta demanda fue, *erróneamente*, radicada en el caso Civil CS-88-108, donde figuran como demandantes la Sucesión de Uribe Arbelaes. Debe recordarse, sin embargo, que los dos (2) casos fueron consolidados. Es por ello que los recurrentes sostienen que el foro de instancia erró al declarar sin lugar la misma por el fundamento de que los terceros demandados no fueron emplazados; sostienen ello era innecesario en vista, principalmente, de la consolidación efectuada y que la Sucesión mencionada era parte en el pleito.

---

mento 29, págs. 84–86).

[16] En *Moa v. E.L.A.*, 100 D.P.R. 573, 587 (1972), en lo pertinente concluimos lo siguiente:

"... como el dolor y sufrimiento no pueden ser objeto de cotización, para determinar el valor razonable de tales daños morales *es preciso que el reclamante, en cada caso, aporte los factores de evidencia necesarios para evaluarlos justa y adecuadamente*, probando que no se trata de una simple pena pasajera, *sino que, en alguna medida apreciable, el reclamante realmente quedó afectado en su salud, bienestar y felicidad*, como dijimos en *Ramos Rivera v. E.L.A.*, 90 D.P.R. 828, 831 (1964)." (Énfasis suplido.)

[17] La Sucesión de don Sigfredo Vélez Pagán, tercera demandada, está compuesta por sus hijos menores de edad Sigfredo Vélez Vélez, representado por su madre Irma Vélez Lucena y la menor Nildá I. Vélez Rodríguez, representada por su madre Nilda Rodríguez y su esposa Irma Vélez Lucena.

 Independientemente de la correción o no de la posición que sostienen los recurrentes, tenemos que éstos *no* presentaron a nivel de instancia prueba alguna en apoyo de los daños y perjuicios que "reclamaban" en dicha demanda contra tercero. Siendo ello así, poco importa que el fundamento que adujera el tribunal en apoyo de su actuación sea o no correcto. Debe recordarse que la revisión se da contra la sentencia y no contra los fundamentos que se exponen en la misma. *Collado v. E.L.A.*, 98 D.P.R. 111, 114 (1969); *Rodríguez v. Serra*, 90 D.P.R. 776, 777 (1964).

V

Por último, señala la parte recurrente que el tribunal de instancia erró al determinar que la imprudencia concurrente de los causantes no le es imputable a sus causahabientes. *Le asiste la razón.*

 Es correcto que en *Molina, Caro v. Dávila*, 121 D.P.R. 362, 374 (1988), resolvimos que " 'no puede reducirse la indemnización concedida a un demandante a base de la negligencia contribuyente en que incurriera otro codemandante como causa de un accidente, a menos que la negligencia de este último pudiera imputarse al primero' ". (Énfasis suprimido.)

Dicha decisión, sin embargo, fue *expresamente revocada* por este Tribunal en el reciente caso de *Miranda v. E.L.A.*, 137 D.P.R. 700 (1994). Al revocar la norma que habíamos establecido en *Molina, Caro*, expresamos en *Miranda v. E.L.A.*, ante, pág. 716, que este "cambio doctrinario jurisprudencial aplicará a todo caso en trámite ante los tribunales y en los cuales aún no haya recaído *sentencia final y firme*". (Énfasis en el original.)

Por los fundamentos antes expuestos, *se dicta sentencia modificatoria, a los efectos antes indicados, de la emitida por el Tribunal Superior de Puerto Rico, Sala de Mayagüez,*

*y así modificada se confirma la misma, devolviéndose el caso a dicho foro para procedimientos ulteriores consistentes con lo aquí resuelto.*

El Juez Asociado Señor Hernández Denton emitió una opinión de conformidad. El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Alonso Alonso disintió de la Parte II de la opinión emitida por entender que no procede conceder lucro cesante.

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Hernández Denton.

Aún cuando estamos conformes con la opinión mayoritaria, suscribimos esta opinión para brevemente expresar la razón por la cual reconsideramos nuestra posición original en *Molina, Caro v. Dávila*, 121 D.P.R. 362 (1988). Aunque en *Miranda v. E.L.A.*, 137 D.P.R. 700 (1994), estuvimos de acuerdo con revocar la doctrina que expusimos en *Molina, Caro v. Dávila*, supra, nos vimos obligados a concurrir con la opinión mayoritaria debido a que entendimos que la adjudicación porcentual de la negligencia a las partes implicadas en el accidente resultaba injusta.

En esa ocasión no tuvimos oportunidad de explicar nuestra posición al endosar la norma allí adoptada de que debe reducirse la indemnización concedida a un demandante indirecto a base de la negligencia comparada en que incurriera el perjudicado directo.

Teniendo el beneficio de una multiplicidad de casos que hemos evaluado en esta etapa apelativa presentados tanto por perjudicados directos como indirectos, nos hemos convencido de que la norma jurisprudencial de inimputabilidad de negligencia de *Molina, Caro v. Dávila*, supra, resulta injusta e incorrecta cuando se toma en consideración

el efecto de la aplicación de la doctrina de nivelación entre cocausantes de un daño permitida por nuestro ordenamiento.