# 2002 DTA 124

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL VII DE CAROLINA Y FAJARDO

MUNICIPIO AUTONOMO DE CAROLINA A TRAVES DE LA OFICINA MUNICIPAL DE PERMISOS URBANISTICOS (OMPU) REPRESENTADA POR SU DIRECTORA INTERINA,
ARQ. LILLIAM RIVERA CORREA
Demandante-Recurrida

v.

MILDRED BRAVO
Demandada-Peticionaria
Núm. KLCE-02-00566

San Juan, Puerto Rico, a 12 de agosto de 2002

Panel integrado por su Presidente, el Juez Miranda de Hostos, la Juez Hernández Torres y el Juez Martínez Torres

Martínez Torres, Juez ponente

### TEXTO COMPLETO DE LA RESOLUCION

Mediante petición de *certiorari* comparece ante nos Mildred Bravo, de aquí en adelante, la codemandada-peticionaria. Solicita que revoquemos dos resoluciones dictadas por el Tribunal de Primera Instancia, Sala Superior de Carolina (Hon. Sonsire Ramos Soler, Juez). En la resolución dictada el 19 de marzo de 2001, el tribunal declaró sin lugar dos mociones radicadas por la codemandada-peticionaria, entiéndase una moción de desestimación y una oposición a réplica a moción de desestimación. A su vez, el tribunal declaró con lugar la

moción en oposición a solicitud de desestimación radicada por la Oficina de Permisos Urbanísticos del Municipio de Carolina (la demandante-recurrida). En esa misma resolución se estableció que las partes tendrían treinta (30) días para finalizar el descubrimiento de prueba.

En la resolución dictada el 13 de mayo de 2001, el tribunal resolvió que había culminado el descubrimiento de prueba, por lo que las partes debían someter tres fechas alternas para celebrar la conferencia con antelación al juicio.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto solicitado.

# I

El 9 de febrero de 2001, el Municipio Autónomo de Carolina, a través de la Oficina Municipal de Permisos Urbanísticos (O.M.P.U), radicó una demanda sobre *injunction* contra Mildred Bravo, su esposo Fulano de Tal y la sociedad legal de bienes gananciales por ellos compuesta. La O.M.P.U. alega que tiene facultad para interponer dicha demanda conforme las disposiciones de la Ley Núm. 81 de 30 de agosto de 1991, la Ley Núm. 76 de 24 de junio de 1975 ▮ y el *"Convenio de Transferencia de Facultades de la Junta de Planificación y la Administración de Reglamentos y Permisos del Gobierno de Puerto Rico al Municipio de Carolina"*.

La O.M.P.U. alegó en la demanda que la aquí codemandada-peticionaria, Bravo, mantiene una terraza en madera y cartón en la azotea del Condominio Tropicana (Apto. 1207), en violación de la Sección 3.02 del Reglamento de Zonificación de Puerto Rico. La O.M.P.U. alegó además que no se expidió el correspondiente permiso para dicha construcción. Por lo tanto, la O.M.P.U. solicitó al tribunal que ordenara a la parte demandada, a su cuenta y riesgo, la remoción, demolición o eliminación de la referida construcción. Solicitó además la concesión de costas y honorarios de abogado.

El 19 de julio de 2001, la codemandada-peticionaria, Bravo, radicó una moción en la que solicitó la desestimación de la demanda. En síntesis, expuso que las leyes citadas por el Municipio de Carolina no le daban jurisdicción, ya que la construcción en controversia existe *"hace más de 15 años"* y fue hecha antes de ella comprar la propiedad. Ap. *Cert.* Núm. 2. Argumentó además que *"no es la llamada a responder por actos que pudieron haber estado contra la ley hace 15 años y sobre la cual las agencias gubernamentales no tomaron acción"*. *Id.* Por último levantó la defensa de incuria (*"lashes"*). *Id.* El 20 de julio de 2001, la demandada-peticionaria Bravo radicó una moción de desestimación enmendada, en la que alegó que la construcción en controversia se realizó luego de seguir los pasos legales necesarios. Ap. *Cert.* Núm. 3.

En el mes de septiembre de 2001, la O.M.P.U. radicó una moción en oposición a solicitud de desestimación. En la misma, se reiteró en alegar que posee las facultades necesarias para interponer la demanda de *injunction*. Por otro lado, argumentó que la demandada-peticionaria Bravo *"no ha adquirido ni puede adquirir un derecho por estar usando la propiedad en clara violación a los reglamentos[,] mucho menos por el transcurso del tiempo"*. Ap. *Cert.* Núm. 4.

En su réplica a oposición a solicitud de desestimación, la codemandada-peticionaria, Bravo, argumentó que el Municipio de Carolina, mediante la interposición de la demanda de *injunction*, pretende pasar por alto el requisito legal de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2101 *et. seq.* A esos efectos, argumentó que todas las facultades concedidas al Municipio conllevan el deber de seguir en todos sus procedimientos las disposiciones de la referida ley, cosa que según ella no se hizo. Por último, argumentó que ese curso de acción atenta contra su derecho al debido proceso de ley. Ap. *Cert.* Núm. 6.

El 7 de febrero de 2002, el Municipio de Carolina radicó una moción en contestación a réplica a solicitud de desestimación. En síntesis, el municipio expresó lo siguiente:

*"La querella administrativa del presente caso fue radicada en nuestras oficinas allá para el 16 de febrero de 1996, y la demanda se radicó en febrero 9 de 2001. En el "ínterin" se le cursaron a la demandada un volumen inmenso de comunicaciones y variadas oportunidades de conformar y/o legalizar las construcciones objeto de la presente demanda sin que se lograse de parte de ella acciones encaminadas y/o dirigidas a tal fin. Precisamente, su presente escrito demuestra ello. Véanse Anejos I al IX."*

[Ap. *Cert.*, Núm. 7].

El 19 de marzo de 2002, el Tribunal de Primera Instancia dictó resolución en la que declaró sin lugar la moción de desestimación y la réplica a oposición a solicitud de desestimación radicadas por la codemandada Bravo. Por su parte, el tribunal declaró con lugar la moción en oposición a solicitud de desestimación radicada por el Municipio de Carolina. En la referida resolución, el tribunal expresó además que las partes tenían 30 días para culminar el descubrimiento de prueba y proveer tres fechas viables alternas para celebrar la conferencia con antelación al juicio. Ap. *Cert.* núm. 8. La resolución se notificó el 6 de mayo de 2002. *Id.*

El 13 de mayo de 2002, el tribunal dictó una orden, notificada el 16 de mayo de 2002, en la que expuso lo siguiente:

*"Enterado. Entendemos que ha culminado el descubrimiento de prueba, por lo que deben someter tres fechas viables alternas para celebrar la conferencia con antelación al juicio."*
[Ap. *Cert.* Núm. 9]

Inconforme con las determinaciones del Tribunal de Primera Instancia, la codemandada Mildred Bravo comparece ante nos mediante petición de *certiorari,* el 6 de junio de 2002. Alega Bravo que el Tribunal de Primera Instancia erró al no desestimar la demanda sobre *injunction,* ya que carece de jurisdicción sobre la materia. Aduce la codemandada-peticionaria Bravo que previo a cualquier trámite judicial sobre este asunto, se debe cumplir con el proceso administrativo según dispuesto en la Ley de Procedimiento Administrativo Uniforme, *supra.* En segundo lugar, alega que erró el tribunal al determinar en su resolución de 13 de mayo de 2001 que el período de descubrimiento de prueba ya finalizó.

El 12 de junio de 2002, la codemandada-peticionaria, Bravo, radicó una moción solicitando la paralización de los procedimientos ante el Tribunal de Primera Instancia. El 17 de junio de 2002, dictamos una Resolución en la que declaramos sin lugar dicha petición, ante la ausencia de notificación al Tribunal de Primera Instancia. De paso, le solicitamos a la codemandada-peticionaria que no más tarde del 19 de junio de 2002, nos acreditara que notificó a tiempo al tribunal *a quo* copia de la petición de *certiorari.* El escrito presentado en cumplimiento de orden se devolvió, ya que adolece de deficiencias. Por lo tanto, se entiende no radicado y queda incumplida nuestra orden de 17 de junio de 2002. ■

Luego de estudiados los hechos y el derecho aplicable, resolvemos.

## II

El Artículo 13.012 de la Ley Núm. 81 de 30 de 1991, mejor conocida como la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4610, establece que los municipios podrán, siguiendo el procedimiento y las normas establecidas en el Artículo 14.001 y subsiguientes, solicitar al Gobernador la transferencia de ciertas facultades de la Junta de Planificación y de la Administración de Reglamentos y Permisos sobre la ordenación territorial, incluyendo querellas, autorizaciones y permisos.

A tenor con la Ley de Municipios Autónomos, el 16 de febrero de 1995 se firmó el *"Convenio de Transferencia de Facultades de la Junta de Planificación y la Administración de Reglamentos y Permisos del Gobierno de Puerto Rico al Municipio de Carolina".* Dentro de las facultades transferidas por dichas agencias al

Municipio de Carolina se encuentran las de autorización de anteproyectos, permisos de construcción, permisos de uso y consultas de ubicación. Las facultades se concedieron por jerarquías, cada una de ellas con sus propias cláusulas y condiciones.

La Ley de Municipios Autónomos también dispone en su Artículo 13.012, *supra*, que las facultades transferidas a los municipios se ejercerán conforme a las normas y procedimientos establecidos en la legislación, reglamentación y política pública aplicable a la facultad transferida, incluyendo la Ley de Procedimiento Administrativo Uniforme, *supra*.

Cónsono con lo anterior, procede estudiar entonces cuál es el procedimiento establecido por la Administración de Reglamentos y Permisos para la adjudicación de solicitudes de investigación y querellas. De acuerdo a la Sección 16.02 del Reglamento de Procedimientos Adjudicativos de A.R.P.E. (Reglamento 3915 de mayo de 1989), existen las llamadas querellas de origen externo, las cuales son radicadas por ciudadanos particulares o agencias mediante carta o personalmente ante la agencia. Estas se conocen como solicitudes de investigación hasta tanto se verifique que existe una violación a la ley o al reglamento.

Posteriormente, el investigador designado tendrá diez (10) días para investigar dicha solicitud y rendir un informe (Sección 16.06 del Reglamento Adjudicativo de A.R.P.E.). Conforme a la Sección 17.00 del Reglamento, el personal técnico designado analizará el informe de investigación y determinará por escrito las violaciones legales o reglamentarias incurridas y preparará una notificación a remitirse al infractor dentro de quince (15) días, luego de rendido el informe por el inspector. En la notificación sobre las violaciones determinadas, se le apercibirá a la parte querellada que se le concede un término de (15) días para que proceda a presentar contestación o alegatos relacionados a las querellas radicadas. En dicha notificación se le apercibirá además que una vez cumplido dicho término sin que se haya realizado gestión alguna en contestación a la querella, **se iniciarán en su contra las acciones judiciales que se estimen pertinentes**. Sección 17.00 del Reglamento Adjudicativo de A.R.P.E.; énfasis suplido.

Por otro lado, en casos de construcciones ya terminadas y de hacerse claro una determinación de eliminación o posible conformación de obras con la reglamentación vigente, se podrá otorgar un plano [sic] razonable para esto, el cual no excederá de sesenta (60) días. *Id*. De comprobarse que el infractor no tiene la intención de eliminar o conformar las violaciones incurridas, el trámite normal de acción será referir el caso a la consideración de la Oficina de Asesoramiento Legal para la acción administrativa o judicial correspondiente. Sección 17.07 del Reglamento Adjudicativo de A.R.P.E.

### III

En el expediente del caso constan una serie de documentos que demuestran los trámites llevados a cabo por el Municipio de Carolina, en relación con una construcción en la propiedad de la codemandada-peticionaria, Bravo. La O.M.P.U. alega que dicha construcción viola las disposiciones del Reglamento de Zonificación de Puerto Rico.

En primer lugar, consta el recibo de radicación de caso en la que se describió el proyecto en controversia como: *"ampliación sin permiso, construcción de rancho de madera (terraza) áreas comunales..."*. Anejo I, Ap. *Cert*. Núm. 7. Como querellante figura Carlos R. Santiago. Como querellados figuran varios apartamentos del Condominio Tropicana. La referida querella tiene fecha de 16 de febrero de 1996.

El 26 de agosto de 1996, el Director de la O.M.P.U. le remitió una carta a la codemandada-peticionaria, Bravo, en la que le informó que de una inspección realizada el 4 de junio de 1996, se determinó que existen *"paredes y techo a terraza abierta en la azotea de Condominio Tropicana"* y que no se había podido comprobar que las obras se construyeron con el debido permiso de construcción de la O.M.P.U. o de A.R.P.E. Véase Anejo II del Ap. *Cert*. Núm. 7. Se especificó que la obra de construcción en controversia está en violación de la Sección

3.02 del Reglamento de Zonificación. Se le apercibió que para legalizar o conformar las obras *"debía eliminar las mismas"*. *Ibid.* Por último, se le expuso a la codemandada-peticionaria que el caso se mantendría pendiente por quince (15) días, en espera a que se legalizaran las obras, se conformaran a los requisitos o se presentara evidencia de la legalidad de las mismas. *Ibid.*

El 25 de octubre de 1996, la O.M.P.U. remitió nuevamente una comunicación a la codemandada-peticionaria Bravo en la que se le notificó, en parte, lo siguiente:

*"El plazo concedido finalizó y no hemos recibido información sobre las acciones correctivas requeridas por nuestra oficina.*

*Por tal razón y siguiendo el trámite normal de acción, de acuerdo al **Reglamento de Procedimientos Adjudicativos**, sírvase esta última comunicación para que comparezca a nuestras oficinas e informe sobre el proceso a seguir por usted para legalizar y/o conformar las obras señaladas en la querella sobre paredes y techo a terraza abierta en la azotea del Condominio Tropicana."*

[*Id*; énfasis suplido].

A renglón seguido, se le concedieron a la codemandada-peticionaria dos alternativas para aclarar, legalizar o conformar las obras en cuestión. En primer lugar, se le dijo que podía someter documentación que comprobara que la construcción se hizo con los permisos correspondientes. Como segunda alternativa, se le dijo que podía radicar una solicitud de permiso de construcción según lo requerido por el Tópico 2, Sección 3.02 del Reglamento de Zonificación de Puerto Rico. En caso de no utilizarse ninguna de las alternativas indicadas, se le apercibió a la codemandada-peticionaria que tenía que eliminar las obras objeto de la querella. Véase Anejo III del Ap. *Cert.* Núm. 7. Por último, se le aclaró a la codemandada-peticionaria, Bravo, que el caso se mantendría por los próximos diez (10) días laborables y que si dentro de dicho plazo no se actuaba sobre el asunto, el caso sería referido a la Sección de Asesoramiento Legal para la acción legal correspondiente.

Nuevamente, el 22 de enero de 1997, la O.M.P.U. se comunicó mediante carta con la codemandada-peticionaria, Bravo. Allí se le expuso nuevamente sobre la falta de permiso de construcción y se le concedió un término improrrogable de cuarenta y cinco (45) días para que procediera a realizar las gestiones correspondientes. Se le apercibió, por último, que transcurrido dicho término sin que se hubieran realizado las gestiones afirmativas pertinentes, se iniciarían las acciones administrativas o judiciales pertinentes.

Además, consta en autos una carta del 14 de marzo de 1997, en la que el municipio le comunicó a la codemandada-peticionaria, Bravo, que debía comunicarse con la Junta de Directores del Condominio Tropicana antes de que la O.M.P.U. pudiera entrar en los méritos de una solicitud de prórroga. Véase Anejo VI del Ap. *Cert.* Núm. 7. El 24 de marzo de 1997, la Asociación de Condómines del Condominio Tropicana objetó la solicitud de prórroga presentada.

Del apéndice del recurso también se desprende una carta del 7 de julio de 1997, en la que la O.M.P.U. le comunicó a la codemandada-peticionaria, Bravo, que el período de cuarenta y cinco días (45) concedido en enero de 1997 había finalizado y no habían recibido información sobre las acciones correctivas requeridas. Se le advirtió que debía comparecer a la O.M.P.U. dentro de los próximos 10 días laborables y que de no agotar ese trámite, el caso sería referido a la Oficina de Asesoramiento Legal para la acción legal correspondiente. La O.M. P.U. le envió a la codemandada peticionaria, Bravo, una última comunicación el 29 de julio de 1997 en la que se le informó que el caso se refirió a asesoramiento legal para la acción administrativa o judicial correspondiente. La demanda de *injunction* se radicó por la O.M.P.U. en febrero de 2001.

Como se desprende de todo lo anteriormente expuesto, la O.M.P.U. cumplió con el Reglamento de

Procedimientos Adjudicativos de A.R.P.E. para este tipo de caso, e incluso, concedió períodos de tiempo más largos que los allí dispuestos. Aún así, la codemandada-peticionaria, Bravo, no utilizó ninguna de las alternativas ofrecidas por la O.M.P.U. y tampoco consta en autos que haya radicado alguna contestación o alegato relacionado a la querella radicada. Por lo tanto, no vemos cómo sostener la alegación de la codemandada-peticionaria, Bravo, en el sentido de que se le violó el debido proceso de ley. Tiempo suficiente se le brindó para actuar o para expresarse en torno a las reclamaciones que se le hacían. También se le advirtió sobre las posibles consecuencias de su actuación.

## IV

El inciso (p) del Artículo 5 de la Ley Núm. 76, *supra*, sec. 71(d)(p), establece que A.R.P.E. será la agencia encargada de velar que las leyes estatales, ordenanzas y reglamentos que regulan la construcción y planificación en Puerto Rico sean cumplidas. Para lograr el ejercicio de ese deber, varios artículos de la ley le dan la autoridad a A.R.P.E. para imponer multas administrativas a los violadores de las leyes de construcción y planificación en Puerto Rico, además de solicitar ante los tribunales y otras agencias otros remedios para obligar ese cumplimiento.

Entre los remedios que puede solicitar A.R.P.E. está el dispuesto en el Artículo 28 de la Ley Núm 76, *supra*, sec. 72. Específicamente, ese artículo dispone en parte lo siguiente:

*"El Administrador o el Secretario de Justicia en los casos en los que así se solicite a nombre del Pueblo de Puerto Rico, o de cualquier propietario u ocupante de una propiedad vecina . . . podrá entablar recurso de interdicto, mandamus, nulidad o cualquier otra acción adecuada para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio construído [sic], o cualquier edificio o uso, hechos o mantenidos en violación de este capítulo o de cualesquiera reglamentos adoptados conforme a la ley y cuya estructuración le haya sido encomendada a la Administración."* [Enfasis suplido].

Cónsono con lo anterior, en la Sección III, Acápite C, inciso 7 del Convenio de Transferencias de facultades de A.R.P.E. al Municipio de Carolina, se le concedió a este último la autoridad para instar *"los recursos legales concernientes representado por el Honorable Alcalde o por cualquier funcionario designado por éste, para atender, denunciar, procesar y resolver las querellas sobre las violaciones de uso y construcción relacionadas con las facultades transferidas"*.

En *A.R.P.E. v. Rodríguez*, 127 D.P.R. 793, 808-809 (1991), el Tribunal Supremo resolvió lo siguiente con relación al Artículo 28 de la Ley Orgánica de A.R.P.E., *supra*:

*"El Art. 28 de la Ley Orgánica de A.R.P.E., supra, actualmente contiene dos partes. En la primera parte se autoriza tanto al Administrador de A.R.P.E. como al Secretario de Justicia y a cualquier propietario u ocupante de una propiedad vecina que resulte o pueda resultar perjudicado a instar, además de los otros remedios provistos por ley, recurso de interdicto para, entre otras cosas, "remover" y "demoler" cualquier edificio construido. La segunda parte es la que se refiere al procedimiento especial específicamente. En ésta se limita la orden a concederse por el tribunal a la paralización provisional o permanente. En síntesis, resolvemos que el procedimiento especial provisto por el Art. 28 de la Ley Orgánica de ARPE, supra, tanto en el momento en que se creó, como al presente, es un recurso adicional e independiente que persigue un propósito específico y limitado: la paralización de la obras o de usos que constituyan violaciones a la ley."*

La primera parte del Artículo 28, *supra*, le concede al Estado o a las personas privadas la capacidad para instar recurso de interdicto para, entre otras cosas, *"remover"* y *"demoler"* cualquier edificio. Eso fue lo que precisamente hizo el Municipio de Carolina a través de la O.M.P.U. Ya este Tribunal de Circuito de Apelaciones ha resuelto que el interdicto ordinario presentado en este tipo de caso tiene que recibir la atención que amerita todo procedimiento ordinario. Véase, *Junta de Condómines ESJ Towers v. Del Rosario Quintero*, KLAN-99-

01245, Sentencia de 31 de marzo de 2000, Circ. Reg. VII (Rodríguez García, Juez ponente). Además, este Tribunal ha resuelto, citando a *A.R.P.E. v. Rodríguez, supra*, a la página 809, que el procedimiento sumario especial que provee el Artículo 28 es de alcance limitado, entiéndase la mera paralización de la obra en controversia. *Junta de Condómines de ESJ Towers v. Del Rosario Quintero et. als, supra.*

A la luz de todo lo antes expuesto, salta a la vista que el Tribunal de Primera Instancia posee jurisdicción para atender la demanda judicial interpuesta. La O.M.P.U. siguió el procedimiento adjudicativo dispuesto en el reglamento de A.R.P.E. para este tipo de situación. Por otro lado, y como este foro apelativo resolviera persuasivamente en *Junta de Condómines de ESJ Towers v. Del Rosario Quintero , id.,* "*la Ley orgánica de A.R. P.E. no establece, ni de su letra se desprende la intención del legislador de que A.R.P.E posea jurisdicción primaria exclusiva en las acciones de interdicto por violaciones a las leyes y reglamentos de construcción y planificación*".

Por lo tanto, el primer error señalado no se cometió.

## V

Al analizar las resoluciones dictadas por el Tribunal de Primera Instancia, notamos que se acogió el recurso como un interdicto ordinario. A esos efectos, el tribunal ordenó en la resolución dictada el 19 de marzo de 2002, que las partes tenían 30 días para culminar el descubrimiento de prueba y proveer tres fechas viables alternas para celebrar la conferencia con antelación al juicio. También resolvió declarar sin lugar la moción de desestimación radicada por la codemandada-peticionaria, Bravo. Esa resolución, según lo expuesto anteriormente, se notificó el 6 de mayo de 2002.

Posteriormente, es decir el 13 de mayo de 2002, notificada el 16 de mayo, el Tribunal de Primera Instancia dictó otra resolución en la que expresó que el período de descubrimiento de prueba había finalizado. Nótese que entre esta resolución y la anterior resolución notificada el 6 de mayo de 2002 transcurrieron sólo 10 días.

Sobre este particular, la codemandada-peticionaria, Bravo, argumenta ante nos que al no haberse contestado aún la demanda de *injunction* por estar pendiente la moción de desestimación, aún no ha comenzado el período de descubrimiento de prueba según provisto en las Reglas de Procedimiento Civil.

Antes de atender este planteamiento, es menester recordar que la revisión judicial se da contra la sentencia y no contra sus fundamentos. *Vélez Rodríguez v. Amaro Cora,* 138 D.P.R. 182 (1995). Aclarado lo anterior, veamos la normativa aplicable.

La Regla 23.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 23.4, dispone:

*"**Regla 23.4. Término para utilizar los mecanismos***

*Las partes concluirán las gestiones relacionadas con el descubrimiento de prueba dentro del término de sesenta (60) días siguientes a la notificación de la contestación a la demanda, reconvención, demanda contra tercero y demanda contra coparte. El tribunal tendrá facultad para prorrogar o acortar dicho término según las circunstancias del caso lo ameriten y garanticen una pronta solución de la controversia."*

Esta regla se basa en la filosofía que prevalece en nuestro ordenamiento procesal de otorgar gran discreción al tribunal para resolver los problemas que surjan en relación con las dilaciones y demoras innecesarias en los procedimientos. Por otro lado, el tribunal puede variar el término establecido por dicha regla, según lo requieran las circunstancias específicas de cada caso, para garantizar que se cumpla el objetivo fundamental de nuestro ordenamiento procesal. Dr. José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* **Publicaciones J.T.S.,** Tomo I, 2000, a la pág. 500.

Por su parte, la Regla 10.1 de Procedimiento Civil, *supra*, dispone que un demandado deberá notificar su contestación dentro de veinte (20) días de habérsele entregado copia del emplazamiento y de la demanda. Dicha regla también dispone que la notificación de una moción permitida por esta regla altera los términos antes mencionados, a menos que por orden del tribunal se disponga algo distinto. Por ejemplo, si el tribunal deniega la moción o pospone su resolución hasta que se celebre el juicio en sus méritos, la alegación correspondiente deberá ser notificada dentro de los diez (10) días siguientes a la notificación de la orden del tribunal.

En el caso ante nuestra consideración, la codemandada-peticionaria, Bravo, radicó una moción de desestimación bajo los fundamentos de falta de jurisdicción sobre la persona y la materia. El tribunal declaró sin lugar esa moción mediante resolución de 19 de marzo de 2002, notificada el 6 de mayo de ese mismo año. Tomando en consideración que la resolución declarando sin lugar la moción de desestimación se notificó el 6 de mayo de 2002, la codemandada-peticionaria, Bravo, contaba con 10 días para proceder a contestar la demanda.

El mismo día que vencían los 10 días para contestar la demanda, 16 de mayo de 2002, se le notificó a la codemandada-peticionaria que el período de descubrimiento de prueba había finalizado. A la luz de las Reglas de Procedimiento Civil aplicables, esa determinación es errónea, ya que en todo caso esa sería la fecha en que habría de comenzar el período de descubrimiento en caso de que la codemandada-peticionaria hubiese contestado la demanda conforme a la Regla 23.4, *supra*.

Ahora bien, dicho término nunca se interrumpió, ya que al momento que suscribimos esta Resolución tanto los términos para contestar la demanda como para completar el descubrimiento de prueba ya transcurrieron. Recuérdese que la interposición de una petición de *certiorari* no tiene el efcto automático de paralizar los procedimientos ante el Tribunal de Primera Instancia. *Pagán Navedo v. Rivera Sierra*, 143 D.P.R. 314, 324 (1997).

En otras palabras, en esta etapa no tiene sentido práctico revocar la resolución dictada el 13 de mayo de 2002. Distinto sería si la codemandada-peticionaria, Bravo, hubiera intentado utilizar los mecanismos de descubrimiento y el tribunal se lo hubiera impedido.

Como eso no fue lo que sucedió en este recurso, declinamos intervenir. Ello no obstante, nada impide que por iniciativa propia o a petición de parte, el Tribunal de Primera Instancia permita que se utilicen en esta etapa, dentro de plazas cortas y controlados, los mecanismos de descubrimiento que proveen las reglas.

## VI

Por los fundamentos antes expuestos, denegamos la expedición del auto solicitado.

Así lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ilena Oquendo Graulau
Secretaria General

**ESCOLIOS 2002 DTA 124**

**1.** Ley Orgánica de la Administración de Reglamentos y Permisos, 23 L.P.R.A. sec. 71 *et. seq.*

**2.** La parte peticionaria debe cumplir rigurosamente con el requisito de notificación al Tribunal de Primera Instancia a no ser que concurran circunstancias especiales y que las mismas sean acreditadas cumplidamente. La discreción que tiene este Tribunal ante un plazo de cumplimiento estricto sólo puede ser ejercitada cuando la parte que pretende que se le exima de su cumplimiento, demuestra justa causa para tal solicitud. En ausencia de tales circunstancias, este Tribunal carece de discreción para eximir a una parte de su cumplimiento. Por lo tanto, el incumplimiento con el requisito de notificación es suficiente para denegar la expedición del auto solicitado. Véase, Regla 53.1(e)(4) de Procedimiento Civil, 32 L.P.R.A. Ap. III; Regla 33(A)

# 2002 DTA 125

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL VII DE CAROLINA Y FAJARDO