EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sucesión José Emanuel Mena Pamias y otros<br><br>Peticionarios<br><br>v.<br><br>Luis Jiménez Meléndez y otros<br><br>Recurridos<br><br>───────────────<br><br>Delia M. Martínez González y otros<br><br>Peticionarios<br><br>v.<br><br>Luis Jiménez Meléndez y otros<br><br>Recurridos | Certiorari<br><br>2023 TSPR 108<br><br>212 DPR \_\_\_ |

Número del Caso:  CC-2022-0689
                  cons. con
                  CC-2022-0695


Fecha:  5 de septiembre de 2023


Tribunal de Apelaciones:

     Panel Especial


Abogados de las partes peticionarias:

     Lcdo. Luis M. Morell Morell
     Lcdo. Gaspar Martínez Mangual
     Lcdo. Gaspar A. Martínez Hernández

Abogado de la parte recurrida:

     Lcdo. Gabriel J. Emanuelli Anzalotta


Materia:  Responsabilidad Civil Extracontractual – Alcance de lo resuelto por el Tribunal Supremo en *Santiago Montañez v. Fresenius Medical*, 195 DPR 476 (2016), para la valorización de los daños.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Sucesión José Emanuel Mena Pamias y Otros<br><br>    Peticionarios<br><br>        v.<br><br>Luis Jiménez Meléndez y Otros<br><br>    Recurridos | | |
| Delia M. Martínez González y Otros<br><br>    Peticionarios<br><br>        v.<br><br>Luis Jiménez Meléndez y Otros<br><br>    Recurridos | CC-2022-0695<br> cons. con<br>CC-2022-0689 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 5 de septiembre de 2023.

El presente caso nos brinda la oportunidad de puntualizar el alcance de lo resuelto por este Tribunal -- hace ya varios años atrás -- en *Santiago Montañez v. Fresenius Medical*, *infra*; referente obligatorio al momento de tratar el tema de la valorización de los daños. En particular, nos vemos en la obligación de repasar las consideraciones que debe tener presente la jueza o el juez sentenciador al momento de realizar el referido cómputo. Veamos.

I.

Allá para el 25 de enero de 2014, a eso de la 1:55 a.m., el Sr. José E. Mena Pamias (en adelante, "señor Mena Pamias") conducía un vehículo de motor, marca *Volkswagen*, del año 2012, por cierto carril reversible -- en dirección sur a norte -- que ubica en la carretera PR-5 en el Municipio de Bayamón. En ese momento, éste se encontraba en compañía de la Sra. Claudia V. Camacho Martínez (en adelante, "señora Camacho Martínez"), quien viajaba en el asiento del pasajero.

Ese mismo día, pero en dirección opuesta, por la referida carretera también transitaba el Sr. Luis Jiménez Meléndez (en adelante, "señor Jiménez Meléndez"), quien conducía un vehículo marca *Sción TC* del año 2013. Mientras conducía su vehículo de motor, el señor Jiménez Meléndez invadió el carril del señor Mena Pamias, provocando que este último realizara una maniobra excesiva para evitar el impacto, lo que resultó ineficaz.

Según determinó el Tribunal de Primera Instancia, el día del referido accidente el señor Jiménez Meléndez conducía su vehículo de motor en contra del tránsito, a una velocidad de entre 73 y 75 millas por hora, y bajo los efectos de bebidas embriagantes. Por su parte, y según sostuvo el foro primario, el señor Mena Pamias conducía su vehículo de motor por el carril correspondiente, a una velocidad moderada, pero, de igual forma, bajo los efectos de bebidas embriagantes.

Así las cosas, y como ya mencionamos, el señor Jiménez Meléndez invadió el carril del señor Mena Pamias provocando que este último realizara una maniobra evasiva para evitar el impacto, la cual fue ineficaz. Como consecuencia de ello, el señor Mena Pamias fue trasladado a una institución hospitalaria donde fue certificada su muerte.

Por su parte, la señora Camacho Martínez -- pasajera del señor Mena Pamias y dueña del vehículo de motor objeto del presente litigio -- sufrió un grave trauma corporal. Como consecuencia de ello, y tras varios intentos infructuosos, falleció en la sala de operaciones.

Por estos hechos, el 4 de agosto de 2014 y el 23 de enero de 2015, respectivamente, el Sr. Emmanuel José Mena de León y el Sr. Christopher John Mena de León, hijos del señor Mena Pamias (en adelante, "Sucesión Mena Pamias"), así como la Sra. Delia Martínez González (en adelante, señora Martínez González") y la menor de edad C.P.C., madre e hija respectivamente de la señora Camacho Martínez (en adelante, "Sucesión Camacho Martínez"), presentaron, por separado, una *Demanda* en daños y perjuicios en contra del señor Jiménez Meléndez, sus padres, entiéndase, el Sr. Luis Jiménez Vázquez (en adelante, "señor Jiménez Vázquez") y la Sra. Carmen Meléndez Marrero (en adelante, "señora Meléndez Marrero"), la extinta sociedad legal de bienes gananciales compuesta por estos últimos y la compañía de seguros Universal Insurance Company. En esencia, ambas sucesiones solicitaron

compensación por los alegados daños y perjuicios ocasionados por el señor Jiménez Meléndez.

En específico, las Sucesiones Mena Pamias y Camacho Martínez adujeron en sus escritos que la muerte de sus familiares cercanos se debió exclusivamente a la negligencia del señor Jiménez Meléndez, por lo que este último debía responder por los daños causados. Lo anterior, debido a que, como ya mencionamos, el señor Jiménez Meléndez conducía su vehículo de motor en contra del tránsito, a exceso de velocidad y bajo los efectos de bebidas embriagantes. A lo peticionado por ambas sucesiones, oportunamente, la parte demandada se opuso.

Celebrado el procedimiento judicial de rigor, el Tribunal de Primera Instancia emitió una primera *Sentencia* en la cual determinó que la conducta negligente exhibida por el señor Jiménez Meléndez, al conducir un vehículo de motor a exceso de velocidad e invadir voluntariamente el carril contrario por donde discurría el vehículo que conducía el señor Mena Pamias, fue la causa próxima o adecuada del accidente y, consecuentemente, de las muertes y los daños sufridos por las Sucesiones Mena Pamias y Camacho Martínez. La referida *Sentencia* fue oportunamente notificada a todas las partes con interés en el litigio.[1]

---

[1] Precisa señalar aquí que, a juicio del foro primario, el hecho de que el señor Mena Pamias condujera en estado de embriaguez no fue un factor que contribuyó a la ocurrencia del accidente. En específico, el Tribunal de Primera Instancia puntualizó que, aun tomando en consideración el estado de embriaguez de ambos conductores, el señor Mena Pamias conducía de forma prudente, en el carril correspondiente, a una velocidad dentro de los límites establecidos y que la maniobra evasiva que éste realizó

Así pues, tras la adjudicación de negligencia, el foro primario -- conforme lo exige nuestro ordenamiento jurídico -- procedió a realizar la correspondiente valorización de los daños. A esos fines, el Tribunal de Primera Instancia le adjudicó valor probatorio a la evidencia pericial presentada por la Sucesión Mena Pamias, así como a la opinión y al informe pericial del economista Dr. Juan Villeta Trigo, perito de la Sucesión Camacho Martínez.

En consecuencia, siguiendo el procedimiento establecido por esta Curia en *Santiago Montañez v. Fresenius Medical, infra*, **y de conformidad con las compensaciones otorgadas en casos anteriores al de autos, relacionadas a la pérdida de un ser querido, y tomando en consideración las particularidades del presente caso**, el foro primario condenó al señor Jiménez Meléndez, a sus padres, el señor Jiménez Vázquez y la señora Meléndez Marrero, a la extinta sociedad legal de bienes gananciales compuesta por éstos, así como a su aseguradora Universal Insurance Company, al pago de las siguientes partidas:

 a. La cantidad de **$225,000.00** como indemnización por concepto de angustias y sufrimientos mentales sufridos y que sufre la menor co-demandante C.P.C.

 b. La cantidad de **$185,000.00** como indemnización por concepto de angustias y sufrimientos mentales sufridos y que sufre la co-demandante Delia Martínez González.

 c. La cantidad de **$75,000.00** como indemnización por concepto de angustias y sufrimientos mentales

---

para evitar el accidente fue razonable dentro de las circunstancias del caso.

sufridos y que sufre el co-demandante Christopher John Mena De León.

d. La cantidad de **$75,000.00** como indemnización por concepto de angustias y sufrimientos mentales sufridos y que sufre el co-demandante Emanuel Mena De León.

e. La cantidad de **$55,000.00** como indemnización por concepto de las angustias y sufrimientos mentales, daños morales y físicos sufridos por Claudia Camacho Martínez mientras estuvo viva luego del accidente hasta su muerte a favor de la menor C.P.C.

f. La cantidad de **$340,000.00** como indemnización del lucro cesante sufrido por la co-demandante C.P.C.

g. La imposición a las partes demandadas al pago de las costas, gastos e intereses al 5.75% anual y la cantidad de $10,000.00 en cada uno de los casos consolidados por concepto de honorarios de abogado. Apéndice del *certiorari* CC-2022-0689, pág. 60.

En el referido documento, el Tribunal de Primera Instancia, además, declaró *no ha lugar* todas las alegaciones de la demanda en contra de terceros, reconvención y demandas contra coparte presentadas por los codemandados.

En desacuerdo con el proceder del foro primario, el señor Jiménez Meléndez, sus padres, entiéndase, el señor Jiménez Vázquez y la señora Meléndez Marrero, y la extinta sociedad legal de bienes gananciales compuesta por éstos, recurrieron al Tribunal de Apelaciones mediante recurso de apelación. En síntesis, arguyeron que el Tribunal de Primera Instancia había errado al no imponerle responsabilidad comparada al señor Mena Pamias; al no imputarle negligencia a la señora Camacho Martínez; al conceder cantidades

excesivamente altas en concepto de lucro cesante, angustias mentales y sufrimientos de las sucesiones; al imponer una cuantía excesiva en concepto de daños y angustias mentales, así como por los daños morales y físicos sufridos por la señora Camacho Martínez mientras estuvo viva a favor de la menor C.P.C.; al no adjudicar responsabilidad alguna a otros terceros, y al imponer temeridad y honorarios de abogado a éstos.

En respuesta, las Sucesiones Mena Pamias y Camacho Martínez presentaron sus respectivos alegatos en oposición. En sus escritos, estos insistieron en la corrección y razonabilidad de la valorización de daños realizada por el Tribunal de Primera Instancia, por lo que solicitaron la imposición de honorarios de abogado por temeridad.

Examinados los alegatos de ambas partes, el foro apelativo intermedio, en una decisión dividida,[2] dictó una *Sentencia* mediante la cual modificó el dictamen emitido por el foro primario. En síntesis, el Tribunal de Apelaciones concluyó que el Tribunal de Primera Instancia había incidido al calcular ciertas cuantías, así como al conceder sumas excesivamente altas.

En específico, el foro apelativo intermedio, al realizar una interpretación en extremo literal de la determinación de este Tribunal en *Santiago Montañez v. Fresenius Medical*, *infra*, se limitó a comparar las cuantías concedidas por el

---

[2] En específico, el Juez ponente lo fue el Juez de Apelaciones Rodríguez Flores, el Juez Candelaria Rosa estuvo conforme y el Juez de Apelaciones Sánchez Ramos disintió en parte.

foro primario con las partidas adjudicadas en casos similares y, -- tras un estricto cálculo matemático --, sin más, redujo las partidas de la siguiente manera:

a. De **$225,000.00** a $ **77,000.00** como indemnización por concepto de angustias y sufrimientos mentales a favor de la menor C.P.C.

b. De **$185,000.00** a **$62,000.00** como indemnización por concepto de angustias y sufrimientos mentales a favor de Delia Martínez González.

c. De **$75,000.00** a **$32,000.00** como indemnización por concepto de angustias y sufrimientos mentales a favor de Christopher Mena De León.

d. De **$75,000.00** a **$32,000.00** como indemnización por concepto de angustias y sufrimientos mentales a favor de Emanuel Mena De León.

e. De **$55,000.00** a **$4,900.00** a favor de la menor C.P.C., como indemnización por concepto de angustias y sufrimientos mentales sufridos por Claudia Camacho Martínez mientras estuvo viva. Apéndice del *certiorari CC-2022-0689*, págs. 34-35.

f. De **$340,000.00** a **$156,707.00** como indemnización por concepto de lucro cesante a favor de la menor de edad C.P.C.[3]

Inconformes con el dictamen emitido por el Tribunal de Apelaciones, comparecen ante nos la Sucesión Camacho Martínez

---

[3] **Por su parte, el Hon. Sánchez Ramos, Juez de Apelaciones, disintió en parte y expresó que:**

> son razonables, a la luz de la prueba desfilada, las cuantías adjudicadas por el Tribunal de Primera Instancia relacionadas con las angustias y sufrimientos mentales de los demandantes, por lo que dicha valoración merece deferencia de nuestra parte. No todos los casos son iguales, y la experiencia humana ante acontecimientos similares puede variar grandemente, por lo cual no pueden los tribunales estar excesivamente y artificialmente restringidos en cuanto a su función de valorar daños de esta naturaleza, en aras de una supuesta e inalcanzable "uniformidad" entre casos que involucran complejos y diferentes matices. (Énfasis nuestro). Véase, Apéndice del *certiorari* CC-2022-0689, pág. 35.

y la Sucesión Mena Pamias mediante recursos independientes de *certiorari*, los cuales fueron oportunamente consolidados. En suma, las referidas sucesiones nos solicitan que revoquemos la *Sentencia* emitida por el foro apelativo intermedio, que modificó las cuantías en daños y perjuicios (incluido el lucro cesante) concedidas por el foro primario en beneficio de éstas y, en consecuencia, que reinstalemos o, en la alternativa, aumentemos, las partidas concedidas inicialmente por el Tribunal de Primera Instancia. Además, nos solicitan que incrementemos la cuantía concedida a éstas por concepto de honorarios de abogado por entender que ésta no es cónsona con la complejidad del litigio ante nos.

Enterado de lo anterior, oportunamente, el señor Jiménez Meléndez presentó *su Alegato de la parte recurrida*. En éste, nos solicita que confirmemos las cuantías por daños, angustias y sufrimientos mentales (incluido el lucro cesante), según modificadas por el Tribunal de Apelaciones. Ello pues, a su juicio, la reducción realizada por el foro apelativo intermedio es cónsona con lo resuelto por este Tribunal en *Santiago Montañez v. Fresenius Medical*, *infra*. Además, nos solicita que deneguemos el petitorio de las sucesiones respecto al incremento de la cuantía por concepto de honorarios de abogado.

Trabada así la controversia, y con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa aplicable a los asuntos ante nuestra consideración.

II.

A.

Como es sabido, en nuestro ordenamiento jurídico, los actos y las omisiones en los que intervenga cualquier género de culpa o negligencia son fuentes de obligaciones que generan responsabilidad civil extracontractual. Art. 1042 del Código Civil de 1930, 31 LPRA ant. sec. 2992 (derogado). En específico, el Art. 1802 del Código Civil de 1930, -- vigente al momento de los hechos que suscitaron la presente controversia -- establecía que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". 31 LPRA ant. sec. 5141 (derogado).[4]

En virtud de lo anterior, es norma firmemente establecida en nuestra jurisdicción que, para reclamar el resarcimiento por los daños y perjuicios sufridos al amparo del artículo de referencia, un demandante debe establecer: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión, el cual tiene que ser culposo o negligente. *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465 (2022); *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 976 (2021); *López v. Porrata Doria*, 169 DPR 135, 150 (2006). Sobre esto último, hemos establecido que la culpa o negligencia consiste en la falta del debido cuidado, que a la vez consiste en no

---

[4] Por su parte, el Artículo 1536 del Código Civil de 2020, actualmente vigente, establece que, "la persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". 31 LPRA sec. 10801.

anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. *Pérez et al. v. Lares Medical et al.*, *supra*, págs. 976-977; *López v. Porrata Doria*, *supra*, pág. 151; *Toro Aponte v. E.L.A.*, 142 DPR 464, 473 (1997).

Ahora bien, dicho ello, debemos tener presente que entre ese acto culposo o negligente y el daño causado se debe establecer un nexo causal adecuado. *Cruz Flores et al. v. Hosp. Ryder et al.*, *supra*; *Pérez et al. v. Lares Medical et al.*, *supra*, págs. 976-977; *Nieves Díaz v. González Massas*, 178 DPR 820, 844 (2010). Al respecto, hemos sentenciado que el nexo causal adecuado no es causa de toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce, según la experiencia general. *Pérez et al. v. Lares Medical et al.*, *supra*, págs. 976-977; *López v. Porrata Doria*, *supra*, págs. 151-152; *Soc. de Gananciales v. Jerónimo Corp.*, 103 DPR 127, 134 (1974).

### B.

Así pues, una vez se impone responsabilidad de conformidad con la normativa antes expuesta, surge "el deber de resarcir al damnificado al otorgarle un valor económico al daño sufrido". *García Pagán v. Shiley Caribbean, etc.*, 122 DPR 193, 206 (1988) citando a J. Bustamante Alsina, *Teoría general de la responsabilidad civil*, 4ta ed., Argentina, Ed. Abeledo-Perrot, 1983, pág. 135. Sobre el referido deber de resarcir, éste se ha comparado con una

subrogación real, en la cual el dinero ocupará el lugar de los daños y perjuicios sufridos. *S.L.G. v. F.W. Woolworth & Co.*, 143 DPR 76, 81 (1997); *García Pagán v. Shiley Caribbean, etc.*, *supra*, págs. 205-206; *Rodríguez Cancel v. A.E.E.*, 116 DPR 443, 455-456 (1985). Ello se hace siempre teniendo en consideración, claro está, que "nuestro sistema no es ni piadoso ni punitivo [sino] meramente reparador". A. Amadeo Murga, *El valor de los daños en la responsabilidad civil*, 3ra ed., Barcelona, Ed. Bosch, 2019, pág. 16.

En esa línea, con relación a la **valorización de los daños**, esta Curia ha expresado en múltiples ocasiones que se trata de una tarea sumamente difícil, ardua y angustiosa, ya que no existen fórmulas científicas que provean un resultado exacto para indicar cómo se justiprecia el dolor y el sufrimiento causado. *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016); *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, 179 DPR 774, 791 (2010); *Vázquez Figueroa v. ELA*, 172 DPR 150, 154 (2007). Por tal razón, la valoración de los daños descansa, en parte, en elementos subjetivos y de especulación que dependen -- en cierto grado -- del juzgador o la juzgadora de los hechos, motivado por un sentido de justicia y de conciencia humana. *Cruz Flores et al. v. Hospital Ryder et al.*, *supra*; *Santiago Montañez v. Fresenius Medical*, *supra*, pág. 488; *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, *supra*, pág. 785.

En esa dirección, conforme lo sentenciado por este Tribunal en *Santiago Montañez v. Fresenius Medical*, *supra*,

debemos señalar que, en el proceso de valorización de los daños, los tribunales sentenciadores, además de examinar la prueba desfilada ante estos, deberán evaluar,

> **las indemnizaciones concedidas en casos anteriores[,] [ya que éstas] constituyen un punto de partida y referencia útil para pasar juicio sobre las concesiones otorgadas por el foro primario. Ello es así[,] aun cuando reconocemos que no existen dos casos exactamente iguales y que cada caso es distinguible según sus circunstancias particulares.** En todo caso, estas compensaciones otorgadas en casos anteriores deben ajustarse a su valor presente. (Citas omitidas y énfasis nuestro). *Santiago Montañez v. Fresenius Medical*, *supra*, pág. 491.

Pero ello no es todo. Tras evaluar aquellos casos comparables que serán utilizados como punto de partida para el proceso de determinar las cuantías a concederse por concepto de los daños sufridos,[5] -- los cuales deberán ser detallados en los dictámenes que emitan los foros *a quo*, según pautamos en el precitado caso --, también hemos señalado que la jueza o el juez sentenciador deberá realizar una gestión adicional. ¿Cuál?

**La respuesta es sencilla. <u>Los tribunales sentenciadores deberán también tomar en consideración "las circunstancias particulares del caso considerado ante el Tribunal"</u>.** (Énfasis nuestro). *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, *supra*, pág. 786.[6] **Así, también se pautó en *Santiago Montañez v. Fresenius Medical*, *supra*, y, en ocasiones, se olvida.**

---

[5] Esto, según hemos establecido en *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, *supra*, y en *Rodríguez et al. v. Hospital et al.*, *supra*.

[6] En *Santiago Montañez v. Fresenius Medical*, *supra*, págs. 495-497, expresamos que:

> En *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, *supra*, acogimos el método que recomendó el ex juez Antonio Amadeo Murga (en

**Es decir, en escenarios como estos, no puede la jueza o el juez sentenciador descansar meramente en un cálculo matemático. Es un análisis de dos pasos.**

En esa dirección, en el pasado ya habíamos advertido que,

---

adelante, "Amadeo Murga") para actualizar al valor presente las compensaciones otorgadas en casos anteriores similares. Conforme a ese método, utilizamos el cambio en el poder adquisitivo del dólar a través del tiempo para obtener el ajuste por inflación. A su vez, el valor adquisitivo del dólar lo obtuvimos del índice de precios al consumidor que prepara el Departamento del Trabajo y Recursos Humanos (en adelante, "Departamento del Trabajo"). Una vez obtenido el ajuste por inflación, realizamos un ajuste adicional por el crecimiento económico ocurrido entre el año del caso que se utiliza como referencia y el año cuando se dictó sentencia en el caso que teníamos ante nuestra consideración.

En aquel entonces, el método propuesto por Amadeo Murga aplicaba el índice de precios al consumidor que utilizaba como base el año 1984. Sin embargo, en el 2009, el Departamento del Trabajo adoptó un nuevo índice de precios al consumidor que utiliza como base el año 2006. En la nueva edición de su libro, Amadeo Murga desfavorece el uso del nuevo índice. Indica que, de acuerdo con el nuevo índice, el costo de vida resulta más bajo en Puerto Rico que en Estados Unidos, lo que considera irreal. En su lugar, recomienda utilizar el índice que representa el producto bruto per cápita. No obstante, señala que si se desea continuar utilizando los índices de precios al consumidor para ajustar las compensaciones, debe utilizarse la tabla de índices de precios al consumidor y ajustar el aumento en el nivel de vida utilizando la tabla de ingreso personal per cápita a los precios constantes de 1954.

Recientemente, en *Rodríguez et al. v. Hospital et al.*, *infra*, reconocimos que no hay consenso entre los expertos en cuanto al método que debe utilizarse para actualizar las compensaciones concedidas en el pasado y optamos por acoger el método que utiliza el índice de precios al consumidor con el 2006 como año base. Empero, rechazamos realizar el ajuste que recomendó Amadeo Murga y adoptamos la postura del Prof. José Julián Álvarez González, quien desfavorece que se haga un ajuste adicional por el crecimiento económico cuando se utiliza el nuevo índice de precios al consumidor. Así, concluimos que cuando utilizamos un índice de precios al consumidor cuyo año base es reciente, es innecesario realizar el ajuste que señala Amadeo Murga como segunda parte del proceso de actualización de las partidas concedidas. **Asimismo, establecimos también que si del proceso de actualización resultan cuantías que consideramos muy bajas, puede responder a que las partidas concedidas en el pasado también eran muy bajas, por lo que procedería aumentar la indemnización que se concederían si las circunstancias particulares del caso lo justifican.** (Cita depurada).

si bien es cierto que no existen dos casos exactamente iguales y que cada caso es distinguible según sus propias circunstancias, a los fines de determinar si la valorización de los daños en un caso específico es o no adecuado, ciertamente resulta de utilidad examinar las cuantías concedidas por este Tribunal en casos similares anteriores, *sin que ello implique que estos se puedan considerar como precedentes obligatorios.* (Énfasis nuestro). *S.L.G. v. Woolworth & Co.*, *supra*, págs. 81-82. Véase, además, *Santiago Montañez v. Fresenius Medical*, *supra*, pág. 491; *Nieves Cruz v. U.P.R.*, 151 DPR 150, 177 (2000).

### III.

Establecido lo anterior, resulta oportuno mencionar aquí que, "[d]entro de los daños considerados resarcibles en el orden patrimonial están los que sufren aquellos cuyas necesidades atendía el causante". *Sucn. Pacheco v. Eastern Med. Assoc., Inc.*, 135 DPR 701, 707 (1994). En específico, el lucro cesante ha sido definido "como la interrupción, disminución o cese en los ingresos de una persona [que incluye] la pérdida, total o parcial, de su capacidad productiva". *Díaz v. Alcalá*, 140 DPR 959, 972 (1996). Véase, además, *Maldonado v. Banco Central Corp.*, 138 DPR 268, 273 (1995). Sobre este particular, hemos sentenciado que el fundamento para este tipo de daño es la pérdida de la esperanza fundada y razonable de unos beneficios futuros. Art. 1059 del Código Civil de 1930, 31 LPRA ant. sec. 3023. Véase, *Sucn. Pacheco v. Eastern Med. Assoc., Inc.*, *supra*, pág. 707; *Hernández v. Fournier*, 80 DPR 93 (1957).

Por otra parte, en cuanto a la transmisibilidad de la acción por lucro cesante, este Tribunal ha sido consecuente en cuanto a que el lucro cesante que se produce debido a la

muerte del causante por un acto ilegal de un tercero será transmisible siempre que el fallecido tuviera personas que dependieran de él al momento de su muerte. *Pate v. U.S.A.*, 120 DPR 566, 570 (1988) citando a E. González Tejera, *Derecho sucesorio puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. I, págs. 260-261. Véase, además, *Sucn. Pacheco v. Eastern Med. Assoc., Inc.*, *supra*, págs. 707-708. En ese sentido, los dependientes pueden o no ser los herederos legítimos de la víctima, lo importante es que éstos demuestren haber sufrido una interrupción real y efectiva de ingresos provenientes del patrimonio del causante. *Íd.*

Por tanto, la compensación por lucro cesante está inexorablemente vinculada con la dependencia económica al momento de la muerte o el evento interruptor. *Díaz v. Alcalá*, *supra*, págs. 972-973; *Zurkowsky v. Honeywell, Inc.*, 112 DPR 271, 275 (1982). Véanse, además, *Velázquez v. Ponce Asphalt*, 113 DPR 39 (1982). Esto último ocurre pues el lucro cesante se concibe como un daño que se le concede al sobreviviente, -- no al fenecido --, por lo que hay que probar esa dependencia. *Cintrón Adorno v. Gómez*, 147 DPR 576, 588 (1999); *Sucn. Pacheco v. Eastern. Med. Assoc., Inc.*, *supra*, pág. 707; *Zurkowsky v. Honeywell, Inc.*, *supra*, pág. 275.

Al respecto, precisa señalar aquí que no es necesario que el perjudicado demuestre con certeza absoluta que devengaría esos ingresos; sino que basta con que se establezca la probabilidad razonable de que hubiese recibido tal ingreso en el futuro. *Díaz v. Alcalá*, *supra*, pág. 972,

citando a H. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. I, pág. 474. Véase, además, *Pate v. U.S.A.*, *supra*, pág. 570. Por tal razón, como parte del cálculo pertinente a realizarse para determinar la cuantía a que una persona tendrá derecho, "debemos utilizar la expectativa de vida útil, por ser el mecanismo más confiable y de mejor sintonía con el carácter compensatorio que informa nuestro sistema civilista, a saber, que los daños a concederse, como mecanismo remedial, son los que en verdad se sufrieron". *Suro v. E.L.A.*, 111 DPR 456, 461 (1981). Por lo tanto, "lo que en verdad podía ganar el causante de los reclamantes hasta el momento en que ejerciera su labor, es lo que éstos pueden recobrar". *Íd.*

**Sobre lo previamente discutido, en el pasado esta Curia había advertido que los daños por lucro cesante no debían determinarse exclusivamente a base de la ecuación matemática a la que hemos hecho referencia**. *S.L.G. Rodríguez v. Nationwide*, 156 DPR 614, 625 (2002); *Vda. de Delgado v. Boston Ins. Co.*, 99 DPR 714, 728-729 (1971). Véase, además, *Suro v. E.L.A.*, *supra*, pág. 460. **Ello se debe a que, la aludida ecuación matemática es sólo uno de los factores, además de todas las otras circunstancias del caso que pueden tomarse en consideración, a los fines de evaluar la razonabilidad de la cuantía en que se estima la pérdida por el lucro cesante.** *Íd.* **Es decir, la adjudicación de las partidas de lucro cesante está igualmente sujeta a los**

**ajustes necesarios para que respondan a las situaciones del momento**. *S.L.G. Rodríguez v. Nationwide*, *supra*, pág. 625. Véase, *Suro v. E.L.A.*, *supra*. Véase, además, *Publio Díaz v. E.L.A.*, 106 DPR 854 (1978).

IV.

Por último, corresponde insistir nuevamente en que, en este tipo de caso, es el foro primario el que tiene contacto directo con la prueba testifical presentada y, por ende, el que está en mejor posición de emitir un juicio sobre la valorización de los daños. *Santiago Montañez v. Fresenius Medical*, *supra*, págs. 490-491; *Rodríguez et al. v. Hospital et al.*, *supra*; *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, *supra*, pág. 785. En cuanto a lo anterior, este Tribunal, en innumerables ocasiones, ha sentenciado que los foros revisores no debemos intervenir con las determinaciones de hechos de las juezas y los jueces sentenciadores, salvo que medie error manifiesto, pasión, prejuicio o parcialidad y, por ende, abuso de discreción. *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Cruz Flores et al. v. Hospital Ryder et al.*, *supra*; *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 338 (2021); o -- en lo que a controversias como ésta se refiere -- cuando la cuantía concedida resulte ridículamente baja o exageradamente alta. *Santiago Montañez v. Fresenius Medical*, *supra*, pág. 490; *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 203 (2013); *Rodríguez et al. v. Hospital et al.*, *supra*, pág. 909.

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de la controversia ante nos.

V.

En el presente caso, como mencionamos anteriormente, las Sucesiones Camacho Martínez y Mena Pamias señalan que el Tribunal de Apelaciones -- al realizar una aplicación mecánica de lo resuelto por esta Curia en *Santiago Montañez v. Fresenius Medical*, *supra*, -- erró al modificar las cuantías en daños, angustias y sufrimientos mentales (incluido el lucro cesante) concedidas por el Tribunal de Primera Instancia. Les asiste la razón.

**Y es que, según lo establecido en *Santiago Montañez v. Fresenius Medical*, *supra*, al momento de valorar los daños, los foros sentenciadores, además de tomar en consideración las indemnizaciones concedidas en casos anteriores a los que en ese momento están bajo su evaluación, también deben de tomar en cuenta las particularidades del caso que tienen ante sí; teniendo presente, claro está, que no todos los casos son iguales, y que la experiencia humana ante acontecimientos similares puede variar significativamente.** En lo que a la causa de epígrafe se refiere, similar análisis fue empleado por el foro primario, no así por el foro apelativo intermedio, por lo que corresponde revocar dicho dictamen.

Y es que, al trasladar la normativa antes expuesta a los hechos ante nos, y tras aplicar el análisis de dos pasos de *Santiago Montañez v. Fresenius Medical*, *supra,* hemos llegado a cuantías similares a las concedidas a las

Sucesiones Camacho Martínez y Mena Pamias por el Tribunal de Primera Instancia. Veamos.

En primer lugar, y en aras de determinar la cuantía a la cual es acreedora la menor C.P.C. por concepto de angustias y sufrimientos mentales, entendemos prudente tomar en consideración nuestra determinación en *Fournier v. Fournier*, 78 DPR 430 (1955), donde le concedimos a una hija, menor de edad, una compensación de $25,000.00 por la muerte de su madre. Así, tras emplear el análisis de dos pasos de *Santiago Montañez v. Fresenius Medical*, *supra*, en el presente caso, tomamos como punto de partida la compensación otorgada en *Fournier v. Fournier, supra,* -- $25,000.00 -- y al aplicar la fórmula correspondiente al caso de autos, obtuvimos un total estimado de $160,000.00.[7] Ahora bien, tomando en consideración las particularidades del caso ante nuestra consideración, -- como edad (se trata aquí de una menor de 6 años), conciencia de ésta sobre el accidente y la relación madre e hija que tenían -- según concluyó el foro primario, y las diferencias con el caso base, coincidimos con el Tribunal de Primera Instancia en que corresponde concederle a la menor C.P.C., la cantidad de **$225,000.00**, como

---

[7] El **poder adquisitivo del dólar en el 1955 era de $5.36.** La cantidad de $25,000.00 concedida en *Fournier* la multiplicamos por $5.36, para un total estimado de **$134,000.00**, que constituye el ajuste por inflación de los $25,000.00.

El **valor adquisitivo del dólar a abril de 2020 era $0.84.** Así pues, para actualizar la cantidad de $134,000.00 (i.e., la cantidad concedida en *Fournier* ajustada por la inflación), al valor adquisitivo del dólar a abril de 2020, realizamos el siguiente cómputo: $134,000.00 ÷ $0.84 = **$159,523.81.** Esta cantidad representa un estimado del valor presente de la indemnización concedida en *Fournier*.

indemnización por concepto de angustias y sufrimientos mentales sufridos y que sufre.

En cuanto a la señora Martínez González -- madre de la causante --, al emplear el referido análisis de dos pasos, tomamos como casos base aquellos donde se otorgó una compensación a una madre por la pérdida de su hija. Por ejemplo, en *Rodríguez et al. v. Hospital et al.*, 186 DPR 889 (2012) -- donde se concedió $225,000.00 a la madre -- y a *Sagardía De Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484 (2009) -- donde se le concedió $350,000.00 --. Así pues, y al aplicar la fórmula correspondiente al caso de autos, obtuvimos un total estimado de $230,000.00[8] y $380,000.00[9] respectivamente, al 2020, momento en que se emitió la *Sentencia* en el caso de autos. Por tal razón, tomando en consideración las particularidades de este caso, entendemos que no erró el Tribunal de Primera Instancia en concederle

---

[8] El **poder adquisitivo del dólar en octubre de 2012 era de $0.86.** La cantidad de $225,000.00 concedida en *Rodríguez et al.* la multiplicamos por $0.86, para un total estimado de **$193,500.00**, que constituye el ajuste por inflación de los $225,000.00.

El **valor adquisitivo del dólar a abril de 2020 era $0.84.** Así pues, para actualizar la cantidad de $193,500.00 (i.e., la cantidad concedida en *Confesor Rodríguez* ajustada por la inflación), al valor adquisitivo del dólar a abril de 2020, realizamos el siguiente cómputo: $193,500.00 ÷ $0.84 = **$230,357.14.** Esta cantidad representa un estimado del valor presente de la indemnización concedida en *Rodríguez et al.*

[9] El **valor adquisitivo del dólar en noviembre de 2009 era de $0.91.** La cantidad de $350,000.00 concedida en *Sagardía De Jesús* la multiplicamos por $0.91, para un total estimado de **$318,500.00**, que constituye el ajuste por inflación de los $350,000.00.

El **valor adquisitivo del dólar a abril de 2020 era $0.84.** Así pues, para actualizar la cantidad de $318,500.00 (i.e., la cantidad concedida en *Sagardía De Jesús* ajustada por la inflación), al valor adquisitivo del dólar a abril de 2020, realizamos el siguiente cómputo: $318,500.00 ÷ $0.84 = **$379,166.67.** Esta cantidad representa un estimado del valor presente de la indemnización concedida en *Sagardía De Jesús.*

**$185,000.00** a la señora Martínez González -- quien pierde una hija mayor de edad -- por las angustias y sufrimientos mentales sufridos y que sufre por la pérdida de ésta.

Además, en cuanto a la indemnización por concepto de las angustias y sufrimientos mentales, daños morales y físicos sufridos por la señora Camacho Martínez mientras estuvo viva luego del accidente hasta su muerte, -- al emplear el mencionado análisis de dos pasos -- podemos considerar lo resuelto por esta Curia en *Sagardía De Jesús v. Hosp. Aux. Mutuo*, *supra*. En aquella ocasión se concedió una compensación de $50,000.00 por daños morales y angustias heredadas por la muerte de un hijo a sus padres. Al aplicar a *Sagardía De Jesús v. Hosp. Aux. Mutuo*, *supra,* la fórmula correspondiente, arroja un total al valor presente de $54,000.00 (estimado)[10] al 2020. Luego de adaptar dicha cuantía a las particularidades del caso ante nuestra consideración, entendemos prudente la cantidad de **$55,000.00**

---

[10] El **valor adquisitivo del dólar en noviembre de 2009 era de $0.91.** La cantidad de $50,000.00 concedida en *Sagardía De Jesús* la multiplicamos por $0.91, para un total estimado de **$45,500.00**, que constituye el ajuste por inflación de los $50,000.00.

El **valor adquisitivo del dólar a abril de 2020 era $0.84**. Así pues, para actualizar la cantidad de $45,500.00 (i.e., la cantidad concedida en *Sagardía De Jesús* ajustada por la inflación), al valor adquisitivo del dólar a abril de 2020, realizamos el siguiente cómputo: $45,500.00 ÷ $0.84 = $54,166.67. Esta cantidad representa un estimado del valor presente de la indemnización por concepto de angustias y sufrimientos mentales concedida en *Sagardía De Jesús.*

Por tanto, si comparamos el valor actual de la cuantía concedida en *Sagardía De Jesús v. Hosp. Aux. Mutuo*, *supra*, de $54,166.67 resulta evidente que el Tribunal de Primera Instancia compensó a la menor C.P.C. dentro de los parámetros de dicho precedente, por lo que su valoración no resulta exageradamente alta.

concedida por el Tribunal de Primera Instancia a la menor C.P.C. por los daños sufridos por su madre.

De igual forma, realizamos el análisis pertinente en cuanto a la indemnización por concepto de daños y perjuicios que sufren los co-demandantes señor Christopher John Mena De León y al señor Emanuel Mena De León, hijos del señor Mena Pamias. En esta ocasión, utilizamos como caso base lo resuelto por esta Curia en *Vélez Rodríguez v. Amaro Cora*, 138 DPR 182 (1995), donde la compensación por angustias mentales al hijo del causante fallecido en un accidente de tránsito fatal donde su padre estaba como pasajero fue de $42,297.42. Así, y al aplicar la fórmula correspondiente a la cantidad antes mencionada, se obtiene un total de $65,000.00 (estimado)[11] al 2020. En consecuencia, concluimos que la cuantía concedida por el Tribunal de Primera Instancia de **$75,000.00** es una que se ajusta a las particularidades del caso ante nuestra consideración.[12]

---

[11] El **valor adquisitivo del dólar en septiembre de 1995 era de $1.29.** La cantidad de $42,297.42 concedida en *Vélez Rodríguez* la multiplicamos por $1.29, para un total estimado de **$54,563.67,** que constituye el ajuste por inflación de los $42,297.42.

El **valor adquisitivo del dólar a abril de 2020, era $0.84.** Así pues, para actualizar la cantidad de $54,563.67 (i.e., la cantidad concedida en *Vélez Rodríguez* ajustada por la inflación), al valor adquisitivo del dólar a abril de 2020, realizamos el siguiente cómputo: $54,563.67 ÷ $0.84 = **$64,956.75.** Esta cantidad representa un estimado del valor presente de la indemnización por concepto de angustias y sufrimientos mentales concedida en *Vélez Rodríguez*.

[12] Ahora bien, aunque estamos de acuerdo con la apreciación que realizó el Tribunal de Apelaciones en que es este último caso, entiéndase *Vélez Rodríguez v. Amaro Cora*, *supra*, el más similar al caso de autos, esto no limita las cuantías a concederse. Lo anterior pues, como ya mencionamos, luego de realizar este ejercicio matemático, los foros sentenciadores **deben tomar en consideración los hechos particulares del caso ante éstos para realizar una determinación que esté acorde a las circunstancias particulares ante sí,** tal y como correctamente realizó el Tribunal de Primera Instancia en el pleito ante nos. Por ejemplo, en *Vélez Rodríguez*

Por último, en cuanto a la partida de **$340,000.00** como indemnización del lucro cesante sufrido por la co-demandante C.P.C., luego de tomar en consideración la jurisprudencia aplicable en el cómputo de estas partidas y las particularidades de este caso, el Tribunal de Primera Instancia acogió la recomendación del perito de la Sucesión Camacho Martínez. No tenemos razón alguna para variar dicha determinación del foro primario, la cual estuvo basada en evidencia documental, testifical y pericial que no ha sido puesta aquí en controversia. Véase, *S.L.G. Rodríguez v. Nationwide*, *supra*; *Suro v. E.L.A.*, *supra*; *Vda. de Delgado v. Boston Ins. Co.*, *supra*.[13]

---

*v. Amaro Cora*, *supra*, el conductor y el pasajero, quienes se encontraban en estado de embriaguez, estaban conduciendo en reversa en una avenida principal cuando fueron impactados por un camión el cual les provoco la muerte. No obstante, en el caso de autos el Tribunal de Primera Instancia concluyó que el señor Mena Pamias estaba conduciendo dentro de los parámetros establecidos y en la vía que le correspondía, distinción importante al momento de determinar la cuantía a concederse, entre otras circunstancias.

[13] Recordemos que en este tipo de caso como parte del cálculo pertinente a realizarse para determinar la cuantía a que una persona tendrá derecho, "debemos utilizar la expectativa de vida útil, por ser el mecanismo más confiable y de mejor sintonía con el carácter compensatorio que informa nuestro sistema civilista, a saber, que los daños a concederse, como mecanismo remedial, son los que en verdad se sufrieron". *Suro v. E.L.A.*, *supra*. Por lo tanto, "lo que en verdad podía ganar el causante de los reclamantes hasta el momento en que ejerciera su labor, es lo que éstos pueden recobrar". *Íd.*

Además, siempre se debe de tener en consideración que los daños por lucro cesante no deben determinarse exclusivamente a una ecuación matemática. *S.L.G. Rodríguez v. Nationwide*, *supra*; *Vda. de Delgado v. Boston Ins. Co.*, *supra*. Véase, además, *Suro v. E.L.A.*, *supra*, pág. 460. Ello surge, pues la aludida ecuación matemática es sólo uno de los factores, además de todas las otras circunstancias del caso que pueden tomarse en consideración, a los fines de evaluar la razonabilidad de la cuantía en que se estima la pérdida por el lucro cesante. *Íd.* Es decir, la adjudicación de las partidas de lucro cesante está igualmente sujeta a los ajustes necesarios para que respondan a las situaciones particulares del momento. *Íd.*

Siendo ello así, no está presente aquí el escenario de pasión, prejuicio, parcialidad o error manifiesto que hubiese podido motivar la intervención del Tribunal de Apelaciones con la determinación del Tribunal de Primera Instancia. Se cometieron, pues, los errores señalados.

Las cuantías concedidas por el foro primario a las Sucesiones Mena Pamias y Camacho Martínez, por concepto de daños y perjuicios (incluido lo relacionado al lucro cesante) fueron todas razonables. Respecto a la temeridad, ésta era una determinación bajo la sana discreción del Tribunal de Primera Instancia.[14]

## VI.

Por los fundamentos antes expuestos, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y, en consecuencia, se restituye en su totalidad la *Sentencia* emitida por el foro primario.

---

[14] Sobre este particular, recordemos que la Regla 44.1(d) de Procedimiento Civil dispone que, "[e]n caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda corresponda a tal conducta". Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V., R. 44.1(d).

En términos generales, el concepto de temeridad integra aquellas actuaciones en que un litigante promueve un pleito que pudo evitarse, que provoquen la prolongación indebida del trámite judicial o que obliguen a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos. *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 147 (2022); *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005); *Blás v. Hosp. Guadalupe*, 146 DPR 267, 335 (1998). Es por esto que, la determinación de **la existencia de temeridad descansa en la sana discreción del Tribunal de Primera Instancia**. *SLG González-Figueroa v. SLG et al.*, *supra*, pág. 150; *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 277 (2021); *Torres Vélez v. Soto Hernández*, 189 DPR 972, 993-994 (2013). Por esto, los tribunales apelativos solo intervendrán con tal determinación cuando surja claramente un abuso de discreción. *VS PR, LLC v. Drift-Wind, supra*, pág. 277; *Meléndez Vega v. El Vocero de PR*, *supra*, pág. 211; *P.R. Oil v. Dayco*, *supra*, pág. 511.

Se dictará *Sentencia* de conformidad.


Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Sucesión José Emanuel Mena Pamias y Otros<br><br>    Peticionarios<br><br>       v.<br><br>Luis Jiménez Meléndez y Otros<br><br>    Recurridos<br>_____<br><br>Delia M. Martínez González y Otros<br><br>    Peticionarios<br><br>       v.<br><br>Luis Jiménez Meléndez y Otros<br><br>    Recurridos | CC-2022-0695<br>cons. con<br>CC-2022-0689 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico a 5 de septiembre de 2023.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y, en consecuencia, se restituye en su totalidad la *Sentencia* emitida por el foro primario.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo