ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| **WINDMAR P.V. ENERGY, INC. h/n/c WINDMAR HOME**<br><br>Apelado<br><br>v.<br><br>**YAHAIRA ORTIZ ORTIZ; MIRIAM ZAYAS ROSARIO; KRISTOFER LEE ROJAS; RAFAEL J. MALDONADO RODRÍGUEZ; la Sociedad Legal de Bienes Gananciales compuesta por YAHAIRA ORTIZ ORTIZ y RAFAEL J. MALDONADO RODRÍGUEZ; DEMANDADOS A, B, C**<br><br>Apelantes | TA2025AP00666 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Civil Núm.: **BY2022CV06153**<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 20 de abril de 2026.

Comparece ante nos la señora Miriam Zayas Rosario (Sra. Zayas Rosario) y el señor Kristopher L. Rojas (Sr. Rojas) (en conjunto, parte apelante), mediante un recurso de apelación y nos solicita que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, (TPI) el 27 de octubre de 2025.[1] Por medio de dicho dictamen, el foro primario desestimó las reconvenciones presentadas contra Windmar P.V. Energy, Inc. h/n/c Windmar Home (Windmar o parte apelada); y declaró con lugar la demanda de epígrafe, imponiéndole a la parte apelante, la señora Yahaira Ortiz Ortiz (Sra. Ortiz Ortiz), el señor Rafael Maldonado Rodríguez (Sr. Maldonado Rodríguez), y la Sociedad Legal de Bienes Gananciales (SBG), compuesta por los últimos dos,

---

[1] Sistema Unificado para el Manejo y Administración de Casos (SUMAC) del TPI, Entrada Núm. 172. Notificada y archivada en autos el 28 de octubre de 2025.

el resarcimiento solidario de $70,426.80 a favor de Windmar, al igual que las costas y una cuantía de $5,000.00 en concepto de honorarios de abogado.

Por los fundamentos que pormenorizamos a continuación, se confirma el dictamen apelado.

## I.

El caso de marras tiene su génesis el 2 de diciembre de 2022 cuando Windmar presentó una demanda contra la parte apelante, la Sra. Ortiz Ortiz, el Sr. Maldonado Rodríguez, y la SBG, compuesta por la Sra. Ortiz Ortiz y el Sr. Maldonado Rodríguez, en concepto de cobro de dinero.[2] Alegó que estos trabajaron para la empresa y canalizaron, indebidamente y para su beneficio, fondos de Windmar. En particular, expuso que la Sra. Zayas Rosario, como Supervisora de Retención, reportó como ventas nuevas aquellas que correspondían a vendedores originales. Según Windmar, posterior a ello, la Sra. Ortiz Ortiz creó expedientes nuevos y/o alteró expedientes existentes para reflejar al Sr. Maldonado Rodríguez o al Sr. Rojas como vendedor de récord. Por tal razón, Windmar solicitó del foro primario condenarlos a todos al pago de una suma de $105,042.41, más daños, intereses legales, costas, gastos, honorarios de abogado y cualquier otro remedio que proceda en ley.

Posteriormente, la parte apelante, la Sra. Ortiz Ortiz, el Sr. Maldonado Rodríguez, y la SBG, compuesta por ambos, radicaron sus respectivas contestaciones a la demanda con reconvenciones el 17 de enero de 2023, el 29 de marzo de 2023, y el 4 de abril de 2023.[3]

---

[2] *Íd.*, Entrada Núm. 1.
[3] *Íd.*, Entradas Núms. 10, 40 y 42.

Por su parte, Windmar presentó sus contestaciones a las reconvenciones el 13 de febrero de 2023, el 10 de abril de 2023, y el 26 de abril de 2023.[4]

Luego de múltiples trámites procesales, el TPI emitió una *Minuta* el 2 de enero de 2025 sobre la Conferencia con Antelación a Juicio celebrada el 11 de diciembre de 2024.[5] Ulteriormente, celebró el juicio los días 15, 18, 19 y 22 de septiembre de 2025.[6] Durante el mismo, las partes desfilaron su prueba y presentaron sus respectivos testigos incluyendo a la Sra. Ortiz Ortiz y al CPA Eduardo González Green (CPA González Green) como perito de Windmar.

El 27 de octubre de 2025, el foro *a quo* emitió una *Sentencia* donde desestimó las reconvenciones presentadas contra Windmar; y declaró con lugar demanda de autos, imponiéndole a la parte apelante, la Sra. Ortiz Ortiz, el Sr. Maldonado Rodríguez, y la SBG, compuesta por estos, el pago solidario de $70,426.80 a favor de Windmar, al igual que las costas y una cuantía de $5,000.00 en concepto de honorarios de abogado.[7]

El 10 de noviembre de 2025, la parte apelante radicó una *Moción solicitando determinaciones de hechos adicionales*,[8] y, el 12 de noviembre de 2025, la Sra. Ortiz Ortiz y el Sr. Maldonado Rodríguez presentaron una *Moción solicitando enmienda a determinaciones de hechos y determinaciones de hechos adicionales*.[9] Sin embargo, el foro primario denegó ambas solicitudes.[10]

---

[4] *Íd.*, Entradas Núms. 18, 44 y 50.
[5] *Íd.*, Entrada Núm. 116. Notificada y archivada el 2 de enero de 2025.
[6] *Íd.*, Entradas Núms. 174, 178, 179 y 185.
[7] *Íd.*, Entrada Núm. 172.
[8] *Íd.*, Entrada Núm. 175; véase además, *Íd.*, Entrada Núm. 176.
[9] *Íd.*, Entrada Núm. 177.
[10] *Íd.*, Entradas Núms. 180 y 182. Notificadas y archivadas el 13 de noviembre de 2025; véase además, *Íd.*, Entrada Núm. 181.

El 12 de diciembre de 2025, la parte apelante presentó ante nos el recurso de epígrafe donde realizó los siguientes señalamientos de error:

**1) ERRÓ EL TRIBUNAL SUPERIOR EN LA APRECIACIÓN DE LA PRUEBA DESFILADA PARA DETERMINAR QUE PROCEDÍA DECLAR[AR] CON LUGAR LA ACCIÓN DE COBRO DE DINERO.**

**2) ERRÓ EL TRIBUNAL SUPERIOR AL NO PERMITIR EL TESTIMONIO DE LOS CODEMANDADOS ZAYAS Y ROJAS A PESAR DE SER PARTES EN EL CASO.**

**3) ERRÓ EL TRIBUNAL SUPERIOR AL AQUILATAR LA PRUEBA PERICIAL DESFILADA POR LA PARTE DEMANDANTE.**

**4) ERRÓ EL TPI AL APLICAR LA DOCTRINA DE COBRO DE LO INDEBIDO Y LA SOLIDARIDAD.**

Presentada la regrabación del juicio en su fondo, la parte apelante presentó un *Alegato suplementario* el 20 de febrero de 2026. Por su lado, Windmar radicó una *Oposición a recurso de apelación* el 16 de marzo de 2026.

## II.

### A.

La Regla 37.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 37.4, expone que, en aquellos casos señalados para la conferencia con antelación al juicio, los representantes legales de las partes deben preparar un *Informe preliminar entre abogados y abogadas* que incluya, entre otra información, "(h) [u]na lista de cada parte con los nombres y las direcciones de las personas testigos, incluso los peritos y las peritas de ocurrencia, que testificarán en el juicio (excepto los testigos de impugnación o de refutación), incluso un resumen de su testimonio". "A menos que se demuestre justa causa, el tribunal no permitirá la presentación en el juicio de aquellos documentos, testigos o controversias no identificadas conforme lo requiere esta regla, y tendrá por renunciadas aquellas objeciones y defensas que no hayan sido especificadas en el *Informe*". Regla 37.4 de Procedimiento Civil, *supra.* En ese sentido, nuestro Tribunal

Supremo resolvió que no se debe permitir la presentación de un testimonio de un perito cuando el testigo no ha sido anunciado en el informe de conferencia con antelación al juicio. *La menor Nilda I. Vélez Rodríguez, representada por su madre Nilda Rodríguez et al. v. Pedro Amaro Cora et al.*, 138 DPR 182, 193-194 (1995).

En esa misma línea, las Reglas 104 y 105 de Evidencia, 32 LPRA Ap. VI, R. 104 y R. 105, disponen el procedimiento y efecto ante la admisión o exclusión errónea de evidencia. Según la Regla 104 de Evidencia, *supra*, "la parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece". Véase además, Regla 105 de Evidencia, *supra*. En el caso de que no se cumplan los requisitos de la Regla 104, *supra*, los tribunales apelativos pueden considerar un señalamiento de error de esta índole, pero debe tratarse de un error extraordinario. Regla 106 de Evidencia, *supra*, R. 106. Para ello, el tribunal debe considerar si "(A) el error fue craso ya que no cabe duda de que fue cometido, (B) el error fue perjudicial porque tuvo un efecto decisivo o sustancial en la sentencia o decisión cuya revocación se solicita y, (C) el no corregirlo resulte en un fracaso de la justicia".

Sin embargo, el funcionamiento efectivo de nuestro sistema judicial, al igual que la disposición rápida de los asuntos litigiosos, "requieren que los jueces de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales". *Banco Popular de Puerto Rico v. Gómez Alayón*, 213 DPR 314, 333-334 (2023) (*citando a In re Collazo I*, 159 DPR 141, 150 (2003)). Por tal razón, se les ha reconocido a los jueces poder y autoridad suficiente para conducir los asuntos litigiosos que tienen ante su consideración y para aplicar correctivos apropiados

en la forma que su buen juicio les indique. *In re Collazo I, supra,* pág. 150. En ese sentido, el foro primario posee el deber ineludible de garantizar que se ventilen los procedimientos sin demora y con miras a que se logre una justicia rápida y eficiente. *In re Pagán Padró,* 181 DPR 517, 529 (2011). Cónsono con ello, los tribunales apelativos no deben intervenir con determinaciones del foro primario ni sustituir el criterio utilizado por este en el ejercicio de su discreción, salvo que dicho tribunal haya actuado con prejuicio o parcialidad, haya incurrido en craso abuso de discreción, o en error manifiesto. *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000); *Pena Rivera v. Pacheco Caraballo,* 213 DPR 1009, 1024 (2024).

**B.**

A tenor con el Artículo 1042 del *"Código Civil de Puerto Rico" Edición de 1930* (Código Civil de 1930), 31 LPRA ant. sec. 2992, las obligaciones surgen de la ley, los contratos, cuasicontratos, actos, omisiones o en que intervenga cualquier género de culpa o negligencia. En particular, los cuasicontratos son aquellos "hechos lícitos y puramente voluntarios, de los que resulta obligado su autor para con un tercero y a veces una obligación recíproca entre los interesados". Artículo 1787 del Código Civil de 1930, *supra,* ant. sec. 5091. El Código Civil de 1930, *supra,* regula dos (2) tipos de cuasicontratos; a saber, la gestión de negocios ajenos y el cobro de lo indebido. Artículos 1788-1801 del Código Civil de 1930, *supra,* ant. secs. 5101-5127.

Respecto al cobro de lo indebido, este produce obligaciones reguladas por los Artículos 1795-1801, *supra,* ant. secs. 5121-5127. La obligación más fundamental producida por este cuasicontrato es la restitución de la cosa recibida indebidamente. *Pagán Santiago v. ASR,* 185 DPR 341, 367 (2012). A esos efectos, el Artículo 1795 del Código Civil de 1930, *supra,* ant. sec. 5121, dispone "[c]uando se recibe alguna cosa que no había derecho a cobrar, y que por error

ha sido indebidamente entregada, surge la obligación de restituirla". Precisamente, para que el cobro de lo indebido produzca la obligación de restitución, se requieren tres (3) requisitos; estos son: "(1) se produjo un pago con la intención de extinguir una obligación; (2) el pago realizado no tenía una justa causa, es decir, que no existía obligación jurídica entre el que paga y el que cobra, o si la obligación existe, que sea por una cuantía menor a la pagada, y (3) el pago fue hecho por error y no por mera liberalidad o por cualquier otro concepto". *Puerto Rico Horse Owners Association (PRHOA) v. Confederación Hípica de Puerto Rico*, 202 DPR 509, 523 (2019); *Pagán Santiago v. ASR, supra*, pág. 367. Cuando concurren estos tres requisitos, surge la obligación de restituir lo indebidamente cobrado, al amparo del 1795 del Código Civil del 1930, *supra*, ant. sec. 5121. *Puerto Rico Horse Owners Association (PRHOA) v. Confederación Hípica de Puerto Rico, supra*, pág. 523.

## C.

En esa misma línea, en una acción de cobro de dinero, la parte demandante tiene que probar ser la acreedora de una deuda vencida, líquida y exigible. *RMCA v. Mayol Bianchi*, 208 DPR 100, 108 (2021). Sobre ese particular, el Tribunal Supremo de Puerto Rico definió que es "líquida" aquella deuda cierta y determinada, mientras que se considera "exigible" porque puede demandarse su cumplimiento. *RMCA v. Mayol Bianchi, supra*, pág. 109. Es decir que, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha sido aceptado como correcto por el deudor y que está vencido". *RMCA v. Mayol Bianchi, supra*, pág. 109 (*citando a Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950)) (Énfasis suplido en el original eliminado).

## D.

Cuando existe una pluralidad de deudores respecto a una obligación, el derogado Código Civil de 1930, *supra,* distingue entre

las obligaciones mancomunadas y solidarias. Respecto a las primeras, cada deudor debe cumplir solamente con la parte de la prestación que le corresponda. En cambio, en una obligación solidaria cada acreedor posee el derecho a reclamarle a cualquiera de los deudores la totalidad de la prestación y cada uno de los deudores tiene la obligación de realizarla íntegramente. *Pérez Hernández v. Lares Medical Center, Inc.*, 207 DPR 965, 977 (2021). Como norma general, las obligaciones se presumen mancomunadas cuando existe pluralidad de deudores, salvo si las partes pactaron expresamente una relación solidaria o cuando la ley así lo establezca. *Pérez Hernández v. Lares Medical Center, Inc.*, *supra*, pág. 978; *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 375 (2012). Ello se deriva del Artículo 1090 del Código Civil de 1930, *supra*, ant. sec. 3101, que establece que "[l]a concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación no implica que cada uno de aquéllos tenga derecho a pedir ni cada uno de éstos deba prestar íntegramente las cosas objeto de la misma. Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria". Sin embargo, nuestro máximo foro resolvió que dicha presunción no aplica en materia de responsabilidad extracontractual. *Fraguada Bonilla v. Hosp. Aux. Mutuo*, *supra*, pág. 376. Es decir, "un demandante puede exigir el resarcimiento de la totalidad del daño a cualquiera de sus cocausantes, pues estos están obligados a responder solidariamente". *Pérez Hernández v. Lares Medical Center, Inc.*, *supra*, pág. 980.

### III.

En el caso de marras, nos toca dirimir si el foro primario incidió al apreciar la prueba desfilada y concluir la procedencia de la acción de cobro de dinero. De igual modo, debemos resolver si el TPI erró al aplicar la doctrina de cobro de lo indebido y la

solidaridad. Por último, corresponde evaluar si el foro *a quo* incidió al examinar la prueba pericial de Windmar y al no permitir el testimonio de la parte apelante, a pesar de ser parte en el pleito.

Según el dictamen apelado, el foro primario delimitó unas determinaciones de hechos incluyendo que Windmar emitió pagos por comisiones erróneas a las cuentas de bancos incluidas por la Sra. Ortiz Ortiz; a saber, las cuentas de banco de esta, la Sra. Zayas y el Sr. Maldonado Rodríguez, cuando dichos pagos no procedían. Asimismo, dictaminó que la Sra. Ortiz Ortiz asignó al Sr. Rojas pagos por la comisión de la venta del Sistema Solar de su casa, al igual que por casos laborados por el Departamento de Rescate. Por tal razón, el TPI resolvió que la conducta de la parte apelante, la Sra. Ortiz Ortiz y el Sr. Maldonado Rodríguez era accionable tanto bajo la figura de cobro de lo indebido como de enriquecimiento injusto, y la acción general de daños y perjuicios. En su consecuencia, desestimó las reconvenciones presentadas contra Windmar. Por último, declaró con lugar la demanda presentada por esta, imponiéndole a la parte apelante, la Sra. Ortiz Ortiz, el Sr. Maldonado Rodríguez, y la SBG, compuesta por los últimos dos, el resarcimiento solidario de $70,426.80 a favor de Windmar, al igual que las costas y una cuantía de $5,000.00 en concepto de honorarios de abogado.

Inconforme, la parte apelante sostuvo que no existía responsabilidad solidaria ni procedía la acción de cobro de lo indebido dado a que Windmar no estableció la ocurrencia de pagos por error de hecho, la parte apelante no se benefició de dicho error ni existió un común acuerdo sobre la intención de defraudar a Windmar. Asimismo, adujo que la prohibición para presentar los testimonios de la parte apelante constituyó una violación a su debido proceso de ley y sus derechos constitucionales. Por último,

planteó que la prueba no sostenía la reclamación en concepto de cobro de dinero.

Por su lado, Windmar arguyó que la parte apelante no pudo demostrar que las determinaciones del foro primario fueran arbitrarias, irrazonables ni contrarias a la evidencia sustancial del expediente respecto a la acción de cobro de dinero. Igualmente, Windmar planteó que la exclusión de los testimonios de la parte apelante se debió a la omisión de esta del Informe de Conferencia con Antelación al Juicio para testificar durante el juicio, más la parte apelante no realizó ofrecimiento de prueba ante dicha exclusión. Por otro lado, sostuvo que el foro primario no se basó únicamente en el testimonio del perito de Windmar, sino en la totalidad de la prueba desfilada en juicio. Por último, arguyó Windmar que las determinaciones de hechos demostraron la participación conjunta de la parte apelante, la Sra. Ortiz Ortiz y el Sr. Maldonado Rodríguez provocando así el pago indebido de comisiones para beneficios de estos.

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario no cometió los planteamientos de error.

Según pormenorizamos anteriormente, la Regla 37.4 de Procedimiento Civil, *supra*, expone que, en aquellos casos señalados para la conferencia con antelación al juicio, los representantes legales de las partes deben preparar un *Informe preliminar entre abogados y abogadas* que incluya, entre otra información, "(h) [u]na lista de cada parte con los nombres y las direcciones de las personas testigos, incluso los peritos y las peritas de ocurrencia, que testificarán en el juicio (excepto los testigos de impugnación o de refutación), incluso un resumen de su testimonio". "A menos que se demuestre justa causa, el tribunal no permitirá la presentación en el juicio de aquellos documentos, testigos o controversias no identificadas conforme lo requiere esta regla, y tendrá por

renunciadas aquellas objeciones y defensas que no hayan sido especificadas en el Informe". Regla 37.4 de Procedimiento Civil, *supra.* (Énfasis suplido). Al examinar el informe de la conferencia con antelación a juicio, en el presente caso, ciertamente surge que la Sra. Zayas Rosario y el Sr. Rojas no fueron anunciados como testigos.[11] Por tanto, ante dicha exclusión, y en el ejercicio de su discreción, el foro primario no incidió en el <u>segundo</u> señalamiento de error; es decir, al prohibir el testimonio de ambos durante el juicio.

Por estar íntimamente relacionados, discutiremos los planteamientos de error uno y cuatro en conjunto. En síntesis, la parte apelante planteó que el foro primario erró al haber aplicado las doctrinas de cobro de lo indebido, cobro de dinero y responsabilidad solidaria.

Es harto conocido que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no procede la intervención de los tribunales apelativos en la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos realizadas por el foro primario. *Pena Rivera v. Pacheco Caraballo*, *supra*, pág. 1024. Precisamente, la tarea de adjudicar credibilidad y de determinar lo que realmente ocurrió en un pleito depende, en gran medida, de la exposición del juez a la prueba presentada; trabajo que, en esencia, se realiza en el foro *a quo*. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778-779 (2022). Es por ello que la deferencia judicial está predicada en que los jueces del TPI están en mejor posición para aquilatar la prueba testifical dado a que poseen la oportunidad de oír, ver y apreciar el comportamiento de los testigos. *Pena Rivera v. Pacheco Caraballo*, *supra*, pág. 1025.

---

[11] *Íd.*, Entrada Núm. 144, págs. 55-58.

Ahora bien, por las circunstancias del presente caso es meritorio destacar los requisitos de la doctrina de cobro de lo indebido; a saber, "(1) <u>se produjo un pago con la intención de extinguir una obligación</u>; (2) el pago realizado no tenía una justa causa, es decir, que <u>no existía obligación jurídica entre el que paga y el que cobra</u>, o si la obligación existe, que sea por una cuantía menor a la pagada, y (3) el <u>pago fue hecho por error</u> y no por mera liberalidad o por cualquier otro concepto". *Puerto Rico Horse Owners Association (PRHOA) v. Confederación Hípica de Puerto Rico, supra,* pág. 523. (Énfasis suplido). Cuando concurren estos tres requisitos, surge la obligación de restituir lo indebidamente cobrado, al amparo del 1795 del Código Civil del 1930, *supra,* ant. sec. 5121.

Asimismo, en una acción de cobro de dinero, la parte demandante tiene que probar ser la acreedora de una deuda vencida, líquida y exigible. *RMCA v. Mayol Bianchi, supra,* pág. 109. Sobre ese particular, el Tribunal Supremo de Puerto Rico definió que es "líquida" aquella deuda cierta y determinada, mientras que se considera "exigible" porque puede demandarse su cumplimiento. *RMCA v. Mayol Bianchi, supra,* pág. 109. Es decir que, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha sido aceptado como correcto por el deudor y que está vencido". *RMCA v. Mayol Bianchi, supra,* pág. 109 (*citando a Guadalupe v. Rodríguez, supra,* pág. 966) (Énfasis suplido en el original eliminado).

Por otro lado, la responsabilidad solidaria no se presume. *Fraguada Bonilla v. Hosp. Aux. Mutuo, supra,* pág. 375. Ello se deriva del Artículo 1090 del Código Civil de 1930, *supra,* ant. sec. 3101, que establece que "[l]a concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación no implica que cada uno de aquéllos tenga derecho a pedir ni cada uno de éstos deba prestar íntegramente las cosas objeto de la misma. Sólo habrá lugar a esto

cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria". Sin embargo, nuestro máximo foro resolvió que dicha presunción no aplica en materia de responsabilidad extracontractual. *Fraguada Bonilla v. Hosp. Aux. Mutuo*, *supra*, pág. 376. Por tanto, bajo el principio de solidaridad, la persona perjudicada puede exigir la reparación del daño a todos o a cualesquiera de ellos. *S.L.G. Vázquez, Ibáñez v. De Jesús*, *supra*, págs. 407-408.

Del expediente y de la TPO se desprende que la Sra. Ortiz Ortiz editó la información de cuentas bancarias de vendedores, calculó comisiones y entró la información bancaria para que Windmar aprobara el pago de comisiones a favor de ella, la Sra. Zayas Rosario y el Sr. Maldonado Rodríguez cuando no les correspondía.[12] Además, emitió varios pagos a favor del Sr. Rojas incluyendo una comisión completa de $500 con relación a la venta de su casa. Es decir, Windmar realizó pagos a favor de vendedores por error pensando que estaba extinguiendo una obligación con ellos, pues desconocía que la Sra. Ortiz Ortiz había realizado cambios y actuaciones para beneficio de ella, la parte apelante y el Sr. Maldonado Rodríguez. Ante la ausencia de una obligación jurídica entre estos y Windmar, y los pagos realizados por error, ciertamente el cobro por parte de estos fue indebido.

---

[12] Regrabación del 22 de septiembre de 2025: 4:22 (comenzó el *directo* de la Sra. Ortiz Ortiz); 25:43 (puesto y funciones); 27:23 (procedimiento de comisiones); 33:15 (ascenso a puesto de Supervisora de "Sales up"); 36:33 (proceso de reventa); 38:06 (modificación sobre ventas); 50:57 (comenzó el *contrainterrogatorio*: admitió que trabajaba el reporte de comisiones calculando comisiones, y poseía acceso a editar los números de cuenta de bancos, al igual que la información de los vendedores); 1:00 (admitió que se asignó a ella misma pagos de comisiones completas de múltiples ventas que ella no llevó a cabo y los recibió a través de la cuenta de banco de su esposo, el Sr. Maldonado Rodríguez); 1:05 (admitió que de una de las tablas surgía que la comisión era por consultor); 1:28 (admitió que pagó una comisión completa y fija de $500 al Sr. Rojas con relación a la venta de su casa); 1:33:16 (comenzó el *redirecto*); 1:40:06 (comenzó el *recontrainterrogatorio*: admitió que el pago que recibía era un *full commission*); Regrabación del 18 de septiembre de 2025 (testimonio del CPA González Green): 2:42:18, 2:58:53 (explicó que encontró que se utilizaron treinta y un (31) cuentas bancarias irregularmente para desembolsar algunas comisiones; indicó que las cuentas de banco que evaluó no correspondían al vendedor original y los beneficiados fueron la Sra. Ortiz Ortiz, el Sr. Maldonado Rodríguez y la Sra. Zayas).

De igual forma, del expediente del caso; en particular, del testimonio del CPA González Green se desprende que la cantidad cobrada indebidamente fue de $39,658,[13] por lo que dicha partida era líquida, vencida y exigible. Asimismo, por tratarse de una responsabilidad extracontractual, no aplicaba la presunción de mancomunidad, por lo que dicho pago era solidario. En su consecuencia, el TPI no incurrió en los planteamientos de error uno y cuatro.

Por último, la parte apelante expuso como tercer planteamiento de error que el foro primario incidió al aquilatar la prueba pericial desfilada por Windmar. Particularmente, sostuvo que esta última no entrevistó ni recibió reclamación alguna por parte de los vendedores originales a quienes supuestamente se les debía pagar las comisiones. Igualmente, expresó que, durante el juicio, el testimonio del CPA González Green consistió en una lectura del informe pericial y este tuvo que aceptar que no pudo completar la validación de si la parte apelante fue la responsable de asignar vendedores distintos a los que configuraban originalmente.

Un examen cuidadoso del expediente ante nos surge que las causas de acción están apoyadas en los demás testimonios vertidos durante el juicio; en particular, del testimonio de la Sra. Ortiz Ortiz, y del CPA González Green.[14] Más importante aún, el testimonio del

---

[13] Regrabación del 18 de septiembre de 2025: 2:42:45, 2:59:40 (testificó que aparecían cuentas de banco con irregularidades y los beneficiados fueron la Sra. Zayas Rosario, la Sra. Ortiz Ortiz y el Sr. Maldonado Rodríguez. Además, expresó que el dinero envuelto fue de $39,658).

[14] Regrabación del 18 de septiembre de 2025: 2:22:58 (comenzó el *directo* del CPA González Green); 2:23:29 (testificó que su encomienda fue verificar unas transacciones irregulares en el tema de pago de comisiones); 2:23:52 (adujo que preparó un informe sobre los hallazgos); 2:33:02 (realizó varias entrevistas a las personas de Windmar y buscó evidencia incluyendo informes); 2:42:18, 2:58:53 (explicó que encontró que se utilizaron treinta y un (31) cuentas bancarias irregularmente para desembolsar algunas comisiones; indicó que las cuentas de banco que evaluó no correspondían al vendedor original y los beneficiados fueron la Sra. Ortiz Ortiz, el Sr. Maldonado Rodríguez y la Sra. Zayas); 3:05:11, 3:09:25, 3:14:11 (otra de las irregularidades que explicó fue que reasignaban los números de cuenta y asignaban a una persona con poca experiencia, como lo que ocurrió con el Sr. Maldonado Rodríguez, y con eso podían comisionar); 3:14:27 (testificó que ese tipo de cambio lo realizaba la Sra. Ortiz Ortiz); 3:41:42 (luego de preparar

CPA González Green no consistió en una lectura de su informe, sino en una explicación de cuál fue su encomienda, el procedimiento seguido, lo corroborado, sus hallazgos y cómo pudo reafirmar sus resultados con documentación que evaluó posterior a su informe. Adviértase que la apreciación de la prueba descansa en la sana discreción del foro primario. Particularmente, "[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley". Regla 110(D) de Evidencia, *supra*, R. 110(D); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 791 (2013). Por tanto, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no procede nuestra intervención con dicha apreciación, y, por ende, el foro primario no incurrió en el <u>tercer</u> señalamiento de error.

**IV.**

Por las razones discutidas anteriormente, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones

---

el informe, la documentación evaluada reafirmó los hallazgos del mismo); 3:46 (comenzó el *contrainterrogatorio*).

Regrabación del 19 de septiembre de 2025: 2:58 (continuación del *contrainterrogatorio*); 7:00 (admitió que comprobó las transacciones irregularidades según el sentido común de su experiencia y descartó otras que no pudo comprobar); 14:04 (testificó que pudo comprobar que quien cobró el dinero no era el vendedor original, porque para el 2019, el Sr. Maldonado Rodríguez no era empleado).